IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


NYKA O'CONNOR,
               Plaintiff,

vs.                                  Case No.: 3:09cv224/WS/EMT

M.L. CARNAHAN, et al.,
               Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff in this action filed pursuant to 42 U.S.C. § 1983 is a Florida Department of Corrections ("FDOC") inmate who proceeds pro se and prepaid the filing fee in full.[1]  The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive actions.  *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)(C); and Fed. R. Civ. P. 72(b).  It is now before the court on Plaintiff's fourth amended complaint (Doc. 93).[2]  After consideration of the numerous issues raised by Plaintiff, it is

---

[1]  Although Plaintiff prepaid the filing fee, under the Prison Litigation Reform Act ("PLRA"), because he is a prisoner and seeks redress from "a governmental entity or office or employee of a governmental entity," the court must review his complaint and dismiss it, or any portion of it, that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A.

[2]  The court directed Plaintiff to file his fourth amended complaint on or before December 7, 2011 (Doc. 90). Although the clerk did not receive the fourth amended complaint until December 9, 2011 (Doc. 93), Plaintiff certifies that he delivered the document to prison officials for mailing on December 5, 2011 (*id.* at 14).  Under the prison mailbox rule, the fourth amended complaint is considered to be timely filed.  *See* Williams v. McNeil, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009) (under the 'prison mailbox rule,' a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing); Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001) (absent evidence to the contrary, court assumes that a pro se petition is delivered to prison authorities for mailing the date it was

the opinion of the undersigned that this action should be dismissed, in part with prejudice and in part without prejudice, with leave to file a fifth amended complaint limited to certain of Plaintiff's free speech claims.

I.      PROCEDURAL HISTORY

Plaintiff is now incarcerated at Union Correctional Institution ("UCI") but was housed at Santa Rosa Correctional Institution ("SRCI") at the time he initiated this case in May 2009 (Doc. 1). In June 2009, Plaintiff filed an amended complaint (144 pages, with exhibits) in which, *inter alia*, he alleged the unconstitutional handling of his prison mail, loss of or damage to his personal property, and retaliatory and harassing acts against him (including with respect to his mental health needs, housing status, the use of excessive force, and an injured arm) (*see* doc. 7 at 17, also at 12–13).[3]   Finding the amended complaint deficient, in part because Plaintiff had improperly attempted to incorporate by reference numerous defendants, allegations, and papers from a different action he had filed previously,[4] the court directed Plaintiff to file a second amended complaint on the court's civil rights complaint form (Doc. 16).  The court informed Plaintiff informed that he must determine which incident or issue he desired to litigate in this action and present only those claims which: (1) arose out of the same transaction or occurrence, and (2) shared a common question of law or fact (*id.* at 2).[5]   Plaintiff was informed that his failure to file an amended complaint as instructed

---

signed).

[3]  All cited page numbers are as assigned by and reflected on the court's docketing system, CM/ECF [Case Management/Electronic Case Filing], rather than those that Plaintiff may have designated.

[4]  Case No.: 3:09cv143/MCR/EMT.  The district court dismissed this case without prejudice pursuant to 28 U.S.C. § 1915(g) (providing that a prisoner may not bring a civil action or appeal if, on three or more prior occasions, he brought an action or appeal that was dismissed as being frivolous or malicious or failing to state a claim, unless the prisoner is under imminent danger of serious physical injury) (*see* Case No. 3:09cv143/MCR/EMT, Docs.7,  9, and 13).

[5]  *See* Rule 20 of the Federal Rules of Civil Procedure, which provides in relevant part:

all persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

would result in a recommendation of dismissal of his case (*id.* at 3).  Plaintiff filed a second amended complaint (Doc. 47) in which he made allegations similar to those asserted in the first amended complaint.  The court rejected this complaint, finding it remained deficient, but gave Plaintiff an opportunity to clarify his allegations in a third amended complaint.  The court provided detailed instructions regarding amendment, including advising Plaintiff that he must briefly state the facts of the case and that, if there were facts which were not related to same basic incident or issue, those facts must be addressed in a separate complaint (Doc. 52 at 2, 8).  Plaintiff was also informed that his failure to submit an amended complaint as directed would result in a recommendation of dismissal of the action (*id.* at 8).  Thereafter, Plaintiff submitted a third amended complaint (Doc. 86), that was also deficient, with many of Plaintiff's allegations being disjointed, confusing, and difficult to follow; moreover, in addition to his allegations concerning the treatment of his mail and retaliatory treatment at SRCI, for the first time Plaintiff alleged unrelated facts concerning his treatment for a toe condition, much of which treatment apparently occurred at another FDOC institution.  The court directed Plaintiff to file a fourth amended complaint, giving him specific instructions regarding amendment, including that his allegations must be limited to claims related to the same basic incident or issue and that the action would be subject to dismissal for the failure to comply with the court's instructions[6] (Doc. 87 at 4). Also, noting the slow progress of the action, the court observed that on several occasions Plaintiff had requested (and received) additional time in which to file documents and that the court had also granted one of his requests to hold the action in abeyance.[7]  Additionally, the court noted that it had found it necessary to issue several orders to

Fed. R. Civ. P. 20.

[6] *Inter alia*, the court instructed Plaintiff that he must comply with all directions provided in the complaint form and the court's prior orders concerning amendment; file a complaint that complied with Fed. R. Civ. P. 8(a) or face dismissal for the failure to do so; exclude conclusory allegations; present his allegations simply, concisely, and legibly; and exclude facts that were extraneous to the claims asserted, with allegations limited to claims related to the same basic incident or issue and named Defendants to include only those persons who were responsible for the alleged constitutional violations.

[7] Plaintiff also filed an interlocutory appeal of the district court's denial of his emergency motion for injunctive relief (*see* Docs. 53, 62, and 66), which the Eleventh Circuit rejected as frivolous (*see* Docs. 80, 91).

show cause for Plaintiff's failure to comply with prior orders.  Plaintiff was advised that there should be no further delay and cautioned that his failure to follow the court's instructions would result in a recommendation of dismissal of the action.

II.    PLAINTIFF'S ALLEGATIONS IN THE FOURTH AMENDED COMPLAINT

Plaintiff lists twenty-seven Defendants in his fourth amended complaint, all of whom worked at SRCI or the central office of the FDOC at the times relevant to Plaintiff's claims.  Plaintiff identifies the Defendants as follows: Carnahan, SRCI mailroom employee; Gavin, SRCI mailroom employee; Ellis, SRCI warden; Henderson, SRCI assistant warden; Haas, SRCI assistant warden; Kolodeij, SRCI lieutenant; Dunlap, SRCI lieutenant or captain; White, SRCI captain; Sealon, SRCI lieutenant; Miller, SRCI psychologist; "B" ("probably Bates"), SRCI inspector; Rummell, SRCI chief health officer; Asanti, SRCI chief health officer; and John/Jane Does #1–14, SRCI or FDOC administrative employees, SRCI correctional officers or inspectors, or SRCI medical department employees (*see* Doc. 93 at 2–4).

The lengthy "Statement of Facts" section of the fourth amended complaint consists of detailed allegations presented in twenty-five numbered paragraphs (Doc. 93 at 9–13); the "Statement of Claims" section, at seven pages and twenty-five paragraphs, is similarly lengthy (*see id.* at 14–21)).  Below, the court sets out Plaintiff's allegations along with the federal constitutional and statutory claims he apparently asserts.[8]  As relief for his claims, Plaintiff demands punitive, compensatory, nominal, and "mental/emotional" damages, a declaratory judgment, an injunction, costs, and attorneys' fees (*id.* at 14).

#1      Between 2005 and 2009, and "thereafter," Carnahan, Gavin, and Jane Doe #1, a SRCI mailroom employee, prevented Plaintiff from sending outgoing legal and privileged mail to legal aid organizations, bar associations, the Florida Department of Health, and the courts.  Defendants refused to send Plaintiff's correspondence to these entities as authorized legal or privileged mail but instead characterized the correspondence as routine mail, which was not sealed and which was

---

[8]  Plaintiff also asserts numerous supplemental state law claims, which the court does not include in this outline.

subject to being read by staff (Doc. 93 at 2, 9).[9]  Defendants thereby violated Plaintiff's "rights to communicate & due process" (*id.* at 14–15).

#2      Between 2005 and 2009, Carnahan, Gavin, and Jane Doe #1 prohibited Plaintiff from receiving incoming legal and privileged mail from the Florida Department of Health and the courts, "among other places," instead subjecting such mail to routine treatment which included having it opened and read by staff prior to delivery to Plaintiff (Doc. 93 at 9).  Defendants thereby violated Plaintiff's "rights to communicate & due process" (*id.* at 14–15).

#3      In 2005, in the course of processing a grievance appeal submitted by Plaintiff, John/Jane #2, an FDOC central office employee, opened—outside of Plaintiff's presence—and retained a sealed envelope attached to the grievance which contained legal mail addressed to a legal aid organization (Doc. 93 at 2, 9).  Defendant thereby violated Plaintiff's "right to communication & due process" (*id.* at 15).

#4      In July 2008, John Doe #3, a SRCI "inventory" employee, failed to properly inventory or store Plaintiff's law books and "religious/esoteric" books after Plaintiff was transferred from UCI to SRCI.  Plaintiff lost approximately ten items (Doc. 93 at 2, 10).  Defendant thereby violated Plaintiff's rights to "communication, reading materials, religious materials, and due process" (*id.* at 15).

#5      In July 2008, John Doe #4, a SRCI "search crew" correctional officer, searched Plaintiff's cell "in a calculated, harassing manner unrelated to prison needs" which left Plaintiff's personal property, including his legal, religious, and other papers, damaged and in disarray (Doc. 93 at 2, 10).  Defendant thereby violated Plaintiff's ability to litigate and his rights to "communication, religion, be free from cruel & unusual punishment & due process" (*id.* at 10, 15).

---

[9]  The definitions for routine mail, legal mail, privileged mail, and publications are found in Fla. Admin. Code RR. 33-210.101, 33-210.102, 33-2.10-103, and 33-501.401(1).  Routine mail is defined as "all inmate mail, except legal mail [ ], privileged mail [ ], and publications [ ]."  Fla. Admin. Code R. 33-210.101(1).  Legal mail is mail that is to and from municipal, county, state and federal courts; state attorneys; private attorneys; public defenders; legal aid organizations; agency clerks; and government attorneys.  Fla. Admin. Code R. 33-210.102(2).  Privileged mail "includes mail to and from public officials, governmental agencies and the news media.  This includes mail to and from the Florida Bar."  Fla. Admin. Code R. 33-210.103(1).  Publications are described as "including books, newspapers, magazines, journals and diaries, calendars and any other printed materials addressed to an specific inmate or found in the personal property of an inmate."  Fla. Admin. Code R. 33-501.401(1).

#6      In July 2008, Ellis, Henderson, Haas, Kolodeij, and John Doe #5, a SRCI administrative employee, retaliated against Plaintiff for filing a grievance concerning the cell search by filing a false disciplinary report ("DR") against him.  Plaintiff was placed on heightened security status "without advance[ ] notice, hearing, & basis of decision" (Doc. 93 at 3, 10).  Defendants thereby violated Plaintiff's rights to "communication, due process" (*id.* at 15).

#7      For several months after July 2008, Ellis, Henderson, Haas, and John Doe #5, along with Kolodeij and Dunlap, maintained Plaintiff's placement on heightened security status without periodic review and even though Plaintiff had prevailed on the DR (Doc. 93 at 10).  Defendants thereby violated Plaintiff's right to due process (*id.* at 16).

#8      For several months after 2008, as authorized by Ellis, Henderson, Haas, and John Doe #5 and as enforced by Kolodeij and Dunlap, Plaintiff was subjected to a heightened security procedure pursuant to which he was required to kneel prior to exiting or entering his cell.  Other inmates on heightened security status were not required to kneel before exiting or entering their cells (Doc. 93 at 10).  Defendants thereby violated Plaintiff's rights to equal protection and due process (*id.* at 16).

#9      For several months after July 2008, as a result of having to kneel prior to exiting or entering his cell, Plaintiff's knees became bruised, callused, swollen, and painful (Doc. 93 at 10–11).  Although Ellis, Henderson, Haas, and John Doe #5 were aware of the "distress" caused by requiring Plaintiff to kneel prior to entering or exiting his cell, they failed to discontinue the security procedure.  Defendants thereby violated Plaintiff's rights to be free from cruel and unusual punishment and to due process (*id.* at 16).

#10     About 2008–2010, Carnahan, Gavin, and Jane Doe #1 prohibited Plaintiff from receiving books from "The American's Bulletin" ("TAB") because, due to their spiral bindings, the books were considered impermissible items.  These Defendants could have but failed to remove the spiral bindings even though Plaintiff had agreed to such removal (Doc. 93 at 11).  Defendants thereby violated Plaintiff's rights to "communication, reading materials & due process" (*id.* at 16).

#11     About 2008–2009, Carnahan, Gavin, and Jane Doe #1 refused to accept books from TAB, falsely asserting that they included information on how to file fraudulent papers against officials.  As a result, Plaintiff was required to send the books to his home at his own expense (Doc.

93 at 11).   Defendants thereby violated Plaintiff's rights to "communication, reading materials & due process" (*id.* at 17).

#12      About 2008–2009, John Doe #6, an FDOC central office employee, along with Ellis, Henderson, Haas, John Doe #4, Carnahan, and Gavin, directed John Doe #7, a SRCI correctional officer, to search Plaintiff's cell in a "calculated harassing manner unrelated to prison needs" to locate a book which Defendants knew Plaintiff did not possess and was never found.   Defendants confiscated Plaintiff's TAB newspaper, and he was required to send the newspaper home.   The search left Plaintiff's cell in disarray (Doc. 93 at 3, 11).   Defendants thereby violated Plaintiff's rights "to communication, reading materials & religion, be free from cruel & unusual punishment & due process" (*id.* at 17).

#13      About 2008–2009, Haas banned all incoming TAB materials to Plaintiff, which prevented Plaintiff from receiving materials for which he had already paid (Doc. 93 at 11). Defendant thereby violated Plaintiff's rights to "communication, reading materials & religion & due process" (*id.* at 17).

#14      About 2008–2009, John Doe #6 approved Haas' ban of all incoming TAB materials, thus prohibiting not only Plaintiff but also all other FDOC inmates from obtaining these materials (Doc. 93 at 11).   Defendant thereby violated Plaintiff's rights to "communication, reading materials & religion & due process" (*id.* at 17).

#15      About February/March 2009 John Doe #7 and John Doe #8, a SRCI "search crew" correctional officer, searched Plaintiff's cell in a "calculated harassing manner unrelated to prison needs," leaving the cell in disarray and Plaintiff's legal and religious materials damaged (Doc. 93 at 3, 12).   Defendants thereby violated Plaintiff's rights to "communication, reading materials, religion, be free from cruel & unusual punishment & due process" (*id.* at 17).

#16      John Doe #7 assaulted and battered Plaintiff by "sadistically & maliciously inflicting emotional distress, anguish & pain" on Plaintiff when he "slammed the cell door flap on [Plaintiff's] arm, then used his body weight, leg strength & arm strength to brace said flap on [Plaintiff's] arm for several seconds."   Following this incident, John Doe #7 failed to notify the medical department or report the use of force (Doc. 93 at 12).   Defendant thereby violated Plaintiff's rights to "be free from cruel & unusual punishment & due process" (*id.* at 18).

#17    Immediately after the incident involving John Doe #7 and the cell door flap, White and Sealon came to Plaintiff's cell and observed that Plaintiff's arm was "visibl[y] bruised, black & blue, [and] swollen," but they failed to record the injury on videotape, have the medical department assess the arm, or prepare a use of force report (Doc. 93 at 12).  Defendants thereby violated Plaintiff's rights to "be free from cruel & unusual punishment & due process" (*id.* at 18).

#18    The day after the use-of-force incident, Jane Doe #9 ("probably Grice"), a SRCI medical department nurse, refused to provide Plaintiff with proper medical care for his bruised and swollen arm.  Plaintiff suffered pain to the extent that for several days he could not use his arm for daily activities or sleep on it (Doc. 93 at 4, 12).  Defendant thereby violated Plaintiff's rights to "be free from cruel & unusual punishment & due process" (*id.* at 18).

#19    Also on the day after the use-of-force incident, Miller and Jane Doe #10, a SRCI psychiatric counselor, failed to conduct a mental assessment of Plaintiff (Doc. 93 at 4, 12). Defendants thereby violated Plaintiff's right to due process (*id.* at 19).

#20    Personnel assigned to look into the incident, including "B" or John Doe #11, a SRCI inspector, failed to conduct a thorough investigation and falsified documents in order to cover up the abuse, and "B" failed to save the video camera recording of the abuse (Doc. 93 at 4, 12–13). Defendants thereby violated Plaintiff's rights to due process (*id.* at 19).

#21    John Doe #12, an FDOC mental health official, Miller, Rummel, Asanti, and Haas failed to establish and enforce a policy to "ensure that inmates recently discharged from TCU [Transitional Care Unit] be held on a 90 day hold, housed alone & monitored prior to mingling with another outpatient inmate[ ]."  As a result of this failure, "the day after the above abuse, in retaliation, [Plaintiff] was discharged from SRCI TCU & relocated to outpatient care," where he was housed with another inmate whom Plaintiff "attempted to physically attack due to [Plaintiff's] unstableness" (Doc. 93 at 4, 13).  Defendants thereby violated Plaintiff's rights to due process and equal protection, and they also violated the Rehabilitation Act and the Americans with Disabilities Act (*id.* at 19).

#22    In February/March 2010, due to his premature discharge from TCU inpatient care to outpatient care, Plaintiff "went into a psych state" after Jane Doe #13, a SRCI medical department nurse, denied Plaintiff his psychiatric medications, then falsified documents "to cover her

delinquency" (Doc. 93 at 4, 13).  Defendant thereby violated Plaintiff's right to due process (*id.* at 19).

     #23    On April 28, 20[09], John/Jane Doe # 14, an FDOC "policy implementer," implemented Rule 33-210.102(8)(d), which permitted legal mail to be opened and read outside an inmate's presence.  Accordingly, Carnahan, Gavin, and Jane Doe #1 handled all of Plaintiff's mail from the court as routine rather than legal mail, until the policy was invalidated (Doc. 93 at 4, 13). Defendant thereby violated Plaintiff's rights "to communication & due process" (*id.* at 19–20).

     #24    Between 2008–2009, Carnahan, Gavin, and Jane Doe #1 refused to permit Plaintiff to receive TAB publications and also denied his grievances concerning the refusal (Doc. 93 at 13). Defendants thereby violated Plaintiff's rights "to communication & due process" (*id.* at 20).

     #25    Between 2008–2009, Carnahan, Gavin, and Jane Doe #1 continued to open and read his incoming legal mail (Doc. 93 at 13).  Defendants thereby violated Plaintiff's rights "to communication & due process" (*id.* at 20).

III.    STANDARD OF REVIEW

     In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him of a right secured by the Constitution.  42 U.S.C. § 1983. Section 1915A requires, among other things, that the court dismiss a complaint that is frivolous or fails to state a claim for relief.  28 U.S.C. § 1915A.  Under § 1915, a complaint is frivolous where it lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989).  Dismissals under § 1915 for the failure to state a claim are governed by the same standard as are dismissals under Fed. R. Civ. P. 12(b)(6).  Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997).  The allegations of the complaint are taken as true and are construed in the light most favorable to the plaintiff.  *See* Pielage v. McConnell, 516 F.3d 1282 (11th Cir. 2008); Thaeter v. Palm Beach County Sheriff's Office, 449 F.3d 1342, 1352 (11th Cir. 2006); Davis v. Monroe County Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997).  Plaintiff must allege more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," and his complaint must include factual allegations sufficient "to raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 569 n.14 (2007) (declining to apply a heightened pleading standard, and abrogating Conley v. Gibson, 355 U.S. 41, 47 (1957)

("a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.")). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949–50, 173 L. Ed. 2d 868 (2009).  Rather, to survive a motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Id. at 555.  A complaint is also subject to dismissal for failure to state a claim "when its allegations, on their face, show that an affirmative defense bars recovery on the claim." Douglas v. Yates, 535 F.3d 1316, 1321 (11th Cir. 2008) (quoting Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003)).

IV.    DISCUSSION

        As an initial matter, the fourth amended complaint is subject to dismissal pursuant to Fed. R. Civ. P. 41(b) for Plaintiff's repeated failure to comply with the court's instructions regarding amendment.  Although pro se complaints must be liberally construed, Trawinski v. United Tech., 313 F.3d 1295, 1297 (11th Cir. 2002), such complaints still must comply with the procedural rules governing the proper form of pleadings.  McNeil v. United States, 508 U.S. 106, 113, 113 S. Ct. 1980, 1984, 124 L. Ed. 2d 21(1993).  If a plaintiff fails to comply with a court order, the action may be dismissed pursuant to Fed. R. Civ. P. 41(b).  See Zocaras v. Castro, 465 F.3d 479, 483 (11th Cir. 2006) (approving dismissal with prejudice as sanction for arrestee's use of false name in filing complaint).  Generally, where the litigant has been forewarned, dismissal for failure to obey a court order is not an abuse of discretion.  Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989); see also Tanner v. Neal, 232 Fed. Appx. 924 (11th Cir. 2007) (affirming sua sponte dismissal without prejudice of inmate's § 1983 action for failure to file an amended complaint in compliance with court's prior order directing amendment, noting that inmate was provided with"a standard form, a clear description of what her complaint should contain, and page and exhibit limitations," but the overall form and content of her amended complaint showed that she did not comply with the district court's order after being warned of the consequences); Hernandez v. Century Correctional Inst., Case

No. 3:07cv404/LAC/EMT (Doc. 66) (order of Eleventh Circuit rejecting, as frivolous, appeal of district court's order dismissing action under Rule 41(b), noting that prisoner/plaintiff had refused to state his claims in a clear and concise manner despite having been given numerous opportunities and detailed instructions on how to properly amend his complaint).

Contrary to the court's repeated prior instructions in its orders, as well as those provided on the complaint forms provided to Plaintiff,[10] he has included in his fourth amended complaint many claims that do not arise out of the same transaction or occurrence and share a common question of law or fact.  Rather, many of the claims—which allegedly arose from events occurring as early as unspecific dates in 2005 and as late as 2010 (the latter of which dates was after this case was initiated)—have no apparent relationship.  While Plaintiff's claims concerning the processing of his mail, including his legal/privileged materials and TAB publications, may be satisfactorily related, these claims have nothing to do with his claim that he lost personal property due to the failure to properly inventory or store his books when he was transferred.  Nor is there any alleged or apparent relationship between the mail and property loss claims and Plaintiff's claims that he was subjected to harassing cell searches and retaliation or that he suffered knee injuries as a result of being forced to kneel pursuant to a heightened security measure.  Similarly, there is no apparent connection between any of these claims and Plaintiff's claim of the use of excessive force, including that the use of force was not reported or documented, he received no medical care for the injury to his arm or psychiatric evaluation, and the incident was not investigated.  Likewise unrelated to his other claims is Plaintiff's claim that certain Defendants failed to establish and enforce a policy concerning the discharge of inmates from the TCU to the general population, which failure resulted in his attempted attack on another inmate.  The same is true with respect to Plaintiff's claim that he suffered a mental break due to the denial of his psychiatric medications and that the denial was covered up by falsified documents.  In short, Plaintiff has failed to comply with the court's orders instructing him that his complaint must only assert claims that arose out of the same transaction or occurrence and shared

---

[10]  The instructions to the "Statement of Facts" section in part provide that "**(If there are facts which are not related to this same basic incident or issue, they must be addressed in a separate civil rights complaint.)**" (Civil Rights Complaint form, Statement of Facts section) (emphasis in original).  The instructions to the Statement of Claims section are similar.

a common question of law or fact, and he has done so despite having been warned repeatedly that the consequence of such failure would be a recommendation of dismissal of this case.  For these reasons, dismissal of this entire action pursuant to Rule 41(b) without prejudice would be warranted.

As discussed below, even considering the substance of Plaintiff's allegations, the court concludes that the majority of his claims fail to state a claim for relief and should be dismissed with prejudice.  *See* Welch v. Laney, 57 F.3d 1004, 1009 (11th Cir. 1995) (noting that dismissal for failure to state a claim may be with prejudice if plaintiff was given an opportunity to amend the complaint).  Certain others should be dismissed without prejudice and/or with leave to file an amended complaint.  For the purpose of this discussion, the court organizes and addresses Plaintiff's factual allegations as follows: (1) deprivation of property and harassing cell searches; (2) retaliatory DR and heightened security status; (3) use of force and subsequent events; (4)  psychiatric needs; and (5) mail processing.

1.    Deprivation of Property and Harassing Cell Searches

Plaintiff asserts that he was deprived of certain books when they were not properly inventoried after he was transferred (¶ 4), that the rejection of his TAB publications resulted in expense to him to mail them to his home or loss of the money he had forwarded in payment for them (¶¶ 11–13), and that his property was left in disarray or damaged following the cell searches (¶¶ 5, 12, and 15).  According to Plaintiff, Defendants thereby infringed his rights to communicate, to practice his religion, to be free from cruel and unusual punishment, and to due process.  The court construes these claims as arising under the First, Fourth, Eighth, and Fourteenth Amendments.

First, it is well established that negligent or intentional deprivations of property resulting from random, unauthorized acts of government officials do not become constitutional violations when there exist adequate remedies under state law for Plaintiff to seek redress for the deprivation. Hudson v. Palmer, 468 U.S. 517, 533, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984); Parratt v. Taylor, 451 U.S. 527, 543–44, 101 S. Ct. 1908, 1917, 68 L. Ed. 2d 420 (1984), *overruled on other grounds*, Daniels v. Williams, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986) (overruling Parratt to the extent that it states that mere lack of due care by a state official may "deprive" an individual of life, liberty, or property under the Fourteenth Amendment); Rodriguez–Mora v. Baker, 792 F.2d 1524, 1527 (11th Cir. 1986).  The Florida Department of Corrections provides an inmate grievance

procedure for contesting misplaced or mishandled inmate property, and Section 768.28, Fla. Stat. (1993), provides a tort remedy for the deprivation of property.  Plaintiff does not assert that these post-deprivation remedies are inadequate nor can he.  Additionally, insofar as Plaintiff seeks to assert a due process claim for the FDOC's failure to follow it own mail handling rules, the court concludes that no such claim has been stated.  A prison's failure to follow its own rules does not constitute a due process violation "if constitutional minima are nevertheless met."  *See* Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996).  While prisoners do have a Fourteenth Amendment liberty interest in receiving notice that prison authorities are withholding their mail, *see* Sorrels v. McKee, 290 F.3d 965, 972 (9th Cir. 2002), Plaintiff does not allege that he did not receive adequate notice of the treatment of his mail or an opportunity to object to such treatment.   For these reasons, Plaintiff has failed to state a Fourteenth Amendment due process claim.

Second, Plaintiff's allegations fail to state a Fourth Amendment claim  (¶¶ 5, 12, and 15). In the context of a prisoner's right of privacy under the Fourth Amendment, the Supreme Court has stated:

> A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order.  We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security.

Hudson, 468 U.S. at 527–28. Thus, a prisoner has no reasonable expectation of privacy from unreasonable searches in his prison cell.  *Id.* at 526–27, 528 n.8.  Accordingly, under Hudson, the Fourth Amendment provides no basis for a prisoner's claims that the search of his cell was done solely for purpose of harassment or that his property was destroyed.  *Id.*  As Hudson precludes Fourth Amendment challenges to prison cell searches and seizures taken for any reason, whether reasonable or not, *see* Hanrahan v. Lane, 747 F.2d 1137, 1139 (7th Cir. 1984) (per curiam), a Fourth Amendment claim by Plaintiff in this case fails.

Third, Plaintiff's allegations do not reflect any infringement of his rights to practice his religion under the First Amendment or to be free of cruel and unusual punishment under the Eighth

Amendment.[11]  Although Plaintiff complains that the deprivation of religious texts infringed his ability to practice his religion, he fails to identify his religion, much less explain how the practice of his religion was infringed by the loss of the texts.  Malicious cell searches and "calculated harassment unrelated to prison needs" may implicate the Eighth Amendment.  Hudson, 468 U.S. at 528–30.  Plaintiff's allegations of three searches performed over the course of approximately eight months, however—which, with one exception, involved different Defendants (*see* ¶¶ 5, 12, and 15, *supra*, and Doc. 93 at 10–12)—do not reflect conduct rising to the level of the "obduracy and wantonness . . . that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."  Whitley v. Albers, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986).  Plaintiff's allegations simply do not suggest that such acts resulted in the denial of "the minimal civilized measure of life's necessities."  Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (quotations omitted).  Plaintiff has therefore failed to state a claim for relief under the Eighth Amendment in connection with the allegedly harassing cell searches.

For all of the foregoing reasons, the court recommends that Plaintiff's claims arising from the alleged deprivation of his personal property and harassing cell searches be dismissed for the failure to state a claim for relief.  As Plaintiff previously has had the opportunity to amend these claims, dismissal should be with prejudice.

   2.   Retaliatory DR and Heightened Security Status

Plaintiff alleges that he received a DR in retaliation for filing grievance about the July 2008 cell search, which resulted in his placement—without adequate notice or a hearing—for several months on heightened security status (¶¶ 6, 7).  While on such status Plaintiff was forced to kneel while entering and exiting his cell, a procedure which caused knee injury and pain; moreover, other "similarly situated" FDOC inmates were not subjected to the same procedure (¶¶ 8, 9).  According to Plaintiff, Defendants' conduct violated his rights to "communication," due process, equal protection, and to be free of cruel and unusual punishment.

---

[11]  Plaintiff's assertion that his right to "communicate" was infringed, which appears to implicate a free speech claim, is discussed below.

Plaintiff's claim that his ability to "communicate" was infringed by the retaliatory DR arises under the First Amendment.  For an act of retaliation to violate the First Amendment, "the plaintiff must show that his speech was a 'substantial' or 'motivating' factor in the allegedly retaliatory decision." Gattis v. Brice, 136 F.3d 724, 726 (11th Cir. 1998).  He must also establish "a retaliatory adverse act" that is more than de minimis.  Morris v. Powell, 449 F.3d 682, 684 (5th Cir. 2006) (internal quotation marks and citation omitted).  As explained in Morris, an act is not de minimis if it "would chill or silence a person of ordinary firmness from future First Amendment activities." Id. at 685–86 (internal quotation marks and citation omitted).  Under this standard, the filing of a single, later-dismissed disciplinary charge against an inmate, even if taken with a retaliatory motive, is insufficient to qualify as more than de minimis. See, e.g., Bridges v. Gilbert, 557 F.3d 541, 555 (7th Cir. 2009) (holding that "[a] single retaliatory disciplinary charge that is later dismissed is insufficient to serve as the basis of a § 1983 action"); Starr v. Dube, 334 Fed. App'x 341, 342–43 (1st Cir. 2009) (per curiam) (same).  Here, where Plaintiff alleges that he was subjected to one "false" DR on which he later prevailed, he has failed to show more than a de minimis retaliatory adverse act.  He therefore has failed to state a First Amendment retaliation claim.

Plaintiff's allegations also fail to state a Fourteenth Amendment due process claim.  The threshold issue with regard to this claim is whether Plaintiff has a liberty interest in freedom from being placed on heightened security status.  A liberty interest protected by the Fourteenth Amendment may arise from the Due Process Clause itself, or state law may create a liberty interest. See Sandin v. Conner, 515 U.S. 472, 483–84, 115 S. Ct. 2293, 2300, 132 L. Ed. 2d 418 (1995).  In Sandin, the Supreme Court observed that states may create liberty interests which are protected by the Due Process Clause but that these interests are generally limited to "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484; see also Moody v. Daggett, 429 U.S. 78, 88 n.9, 97 S. Ct. 274, 279 n.9, 50 L. Ed. 2d 236 (1976) (noting generally that prison transfers and changes in classification status do not require due process protections).  Although "prisoners do not shed all constitutional rights at the prison gate, . . . lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a

retraction justified by the considerations underlying our penal system." Sandin, 515 U.S. at 485 (citations, quotation marks, and alteration omitted). Confinement apart from the general population, for reasons of security or the order and effective management of the institution, is a necessary limitation of privileges and rights that incarceration demands. Addressing the issue of an inmate's confinement in administrative segregation, the Supreme Court has noted that "[i]t is plain that the transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." Hewitt v. Helms, 459 U.S. 460, 468, 103 S. Ct. 864, 869, 74 L. Ed. 2d 675 (1983), *receded from on other grounds by* Sandin, 515 U.S. at 481 (concluding that the focus of the liberty interest inquiry should be on the nature of the deprivation rather than on the language of the state prison regulation).

The only aspect of Plaintiff's placement on heightened security status which he describes as being different from his regular custody status, and the only aspect of it of which he complains, is the procedure that required him to kneel before entering and exiting his cell. The facts as pleaded do not show that Plaintiff's placement on "heightened security status" for several months, during which time he was required to kneel frequently, imposed an atypical and significant hardship on him in relation to the ordinary incidents of his prison life. Thus Plaintiff has failed to show he had a constitutionally protected liberty interest with respect to his placement on heightened security status. Absent such a protected liberty interest, Plaintiff's assertions that he received no notice or hearing of his placement on heightened security status and was maintained on such status for several months without review fail to state a Fourteenth Amendment due process claim.

Additionally, Plaintiff's allegations that he was placed on heightened security status and that as a result of having to kneel repeatedly his knees became bruised, callused, and painful fail to show a violation of the Eighth Amendment. The Eighth Amendment requires that, at the minimum, all claims challenging conditions of confinement must demonstrate an infliction of pain "without any penological purpose" or an "unquestioned and serious deprivation of basic human needs" such as medical care, exercise, food, warmth, clothing, shelter, or safety. Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981); *see also* Hamm v. DeKalb County, 774 F.2d 1567, 1571–72 (11th Cir. 1985). Furthermore, "conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions

are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.*

To establish an Eighth Amendment claim for deliberate indifference, a plaintiff must show "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995).   Under the first requirement, known as the "objective component," a prisoner must prove that the condition of which he complains is sufficiently serious to violate the Eighth Amendment. Hudson, 503 U.S. at 8.  The challenged condition must be "extreme." *Id.* at 9.  While an inmate "need not await a tragic event" before seeking relief, Helling v. McKinney, 509 U.S. 25, 33, 113 S. Ct. 2475, 2481, 125 L. Ed. 2d 22 (1993), he must at the very least show that a condition of his confinement "pose[s] an unreasonable risk of serious damage to his future health" or safety. *Id.* at 35.  Moreover, the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to [the challenged condition of confinement].  It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk.  In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. *Id.* at 36.  The second requirement is known as the "subjective component," pursuant to which the prisoner must show that the defendant prison officials "acted with a sufficiently culpable state of mind" with regard to the condition at issue. Hudson, 503 U.S. at 8 (quotation marks and citation omitted).  Under the deliberate indifference standard, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Farmer, 511 U.S. at 837.

In the instant case, the condition of confinement to which Plaintiff was exposed on heightened security status, that is, kneeling before entering and exiting his cell, does not suggest the type of extreme condition that poses an unreasonable risk of serious damage to Plaintiff's health or safety.  Moreover, under Eleventh Circuit law, an injury can be "objectively, sufficiently serious"

only if there is more than de minimis injury.  *See* <u>Johnson v. Breeden</u>, 280 F.3d 1308, 1321 (11th Cir. 2002); *see also* <u>Nolin v. Isbell</u>, 207 F.3d 1253, 1258 n.4 (11th Cir. 2000) (bruises were non-actionable de minimis injury). The complained-of injuries to Plaintiff's knees are de minimis in nature and thus are not actionable.  For both of the foregoing reasons, Plaintiff has failed to state an Eighth Amendment claim.

Finally, Plaintiff complains that his being forced to kneel while on heightened security status, when other similarly situated inmates were not, violated his right to equal protection.  The Equal Protection Clause of the Fourteenth Amendment requires the government to treat similarly situated people alike.  <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313 (1985).  To state a claim under the Equal Protection Clause, a prisoner generally must allege "that (1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." <u>Jones v. Ray</u>, 279 F.3d 944, 946–47 (11th Cir. 2001) (internal quotations omitted).  Thus, in order to assert a viable equal protection claim, a plaintiff must first make a threshold showing that he was treated differently from others who were similarly situated to him. *See* <u>Nordlinger v. Hahn</u>, 505 U.S. 1, 112 S. Ct. 2326, 2331, 120 L. Ed. 2d 1 (1992); <u>Hendking v. Smith</u>, 781 F.2d 850 (11th Cir. 1986).  The plaintiff must also allege that the defendant acted with the intent to discriminate against him.  *See* <u>McClesky v. Kemp</u>, 481 U.S. 279, 292, 107 S. Ct. 1756, 1767, 95 L. Ed. 2d 262 (1987); <u>E & T Realty v. Strickland</u>, 830 F.2d 1107, 1113 (11th Cir. 1987).  Conclusory allegations or assertions of personal belief of disparate treatment or discriminatory intent are insufficient.  <u>GJR Inv., Inc. v. County of Escambia, Fla.</u>, 132 F.3d 1359, 1367–68 (11th Cir. 1998); <u>Coon v. Ga. Pac. Corp.</u>, 829 F.2d 1563, 1569 (11th Cir. 1987).  The Equal Protection Clause is also implicated in "class of one" claims.  <u>Campbell v. Rainbow City, Ala.</u>, 434 F.3d 1306, 1314 (11th Cir. 2006).  A "class of one" equal protection claim does not allege discrimination against a protected class, but rather it alleges that the plaintiff "'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" <u>Griffin Indus. v. Irvin</u>, 496 F.3d 1189, 1202 (11th Cir. 2007), quoting <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000).  The same strict "similarly situated"

standard applies whether an equal protection claim is brought under a "class of one" theory or a traditional theory of unlawful discrimination.  *Id.* at 1204–05.

Other than in conclusory fashion, Plaintiff does not allege in the fourth amended complaint that he is similarly situated with other prisoners who received more favorable treatment than he; moreover, with respect to a traditional equal protection claim, Plaintiff fails to allege that the discriminatory treatment was based on a constitutionally protected interest, such as race.  Prisoners, including those held in different custody statuses, do not constitute a protected class.  *See* Abdul–Akbar v. McKelvie, 239 F.3d 307, 317 (3d Cir. 2001); Pryor v. Brennan, 914 F.2d 921, 923 (7th Cir. 1990).  Moreover, as to both types of equal protection claims,  Plaintiff does not allege that a Defendant acted with the intent to discriminate against him.  Plaintiff's allegations therefore fail to state an equal protection claim under the Fourteenth Amendment.

For all of the foregoing reasons, the court recommends that Plaintiff's claims arising from the allegedly retaliatory DR and his placement on heightened security status—claims which he has previously had the opportunity to amend—be dismissed with prejudice for the failure to state a claim for relief.

### 3.   Use of Force

Plaintiff alleges that he was subjected to the use of excessive force when the door of his cell slot was slammed and held on his arm for several seconds, causing bruising, swelling, and soreness of the arm.  Plaintiff further contends that no thorough or proper investigation was conducted and that he was denied medical and psychiatric care following the incident (¶¶ 16–20).

Claims of excessive force by prison officials fall under the Eighth Amendment's proscription against cruel and unusual punishment.  As with other claims under the Eighth Amendment, use-of-excessive-force claims have a subjective and an objective component.  Under the subjective component, to sustain an Eighth Amendment challenge it must be shown that prison officials' actions amounted to an "unnecessary and wanton infliction of pain."  Whitley, 475 U.S. at 319.  "Force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm.'"  Skrtich v. Thornton, 280 F.3d 1295, 1300 (11th Cir. 2002), quoting Whitley, 475 U.S. at 320–21.  In determining whether an application of force was applied maliciously and sadistically to cause harm,

a variety of factors are considered including: "the need for the application of force; the relationship between that need and the amount of force used; the extent of the threat to the safety of staff and inmates, as reasonably perceived by officials; the extent of injury; and any efforts made to temper the severity of the response." Hudson, 503 U.S. at 7–8; *see also* Whitley, 475 U.S. at 321; Campbell v. Sikes, 169 F.3d 1353, 1375 (11th Cir. 1999). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Whitley, 475 U.S. at 321, quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973).

The "objective component" of an Eighth Amendment use-of-excessive-force claim determines if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation. *See* Wilson v. Seiter, 501 U.S. 294, 303, 111 S. Ct. 2321, 2326, 115 L. Ed. 2d 271 (1991). In situations involving allegations of the use of excessive force, the Supreme Court has abrogated any requirement that the resulting injury be "significant." Hudson, 503 U.S. at 9. Nevertheless, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Id.* (quotation omitted). "[Excluded] from constitutional recognition [are] de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 9–10 (quotation marks and citation omitted). The Eleventh Circuit has repeatedly held that a push or shove that causes pain and necessitates no or merely minor medical treatment is not a constitutional violation, even where the prisoner was restrained and no further force was necessary. *See, e.g.*, Jones v. City of Dothan, 121 F.3d 1456, 1460–61 (11th Cir. 1997); Post v. City of Fort Lauderdale, 7 F.3d 1552, 1556 (11th Cir. 1993), modified, 14 F.3d 583 (11th Cir. 1994). Furthermore, a conclusory allegation that the prisoner suffered serious injury should be discounted, and the absence of further evidence of injury justifies the conclusion that the use of force on the prisoner was minimal. Brown v. Smith, 813 F.2d 1187 (11th Cir. 1987); Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990).

Plaintiff's allegations are insufficient to establish the objective component of a use-of-excessive-force claim. The amount of forced alleged by Plaintiff—that a correctional officer "slammed" the cell slot door against Plaintiff's arm and then "braced" it there for several seconds—

while regrettable, is not of a sort force that is "repugnant to the conscience of mankind" and should be deemed de minimis in nature.  Hudson, 503 U.S. at 9–10.  Also, Plaintiff's allegations suggest, at most, that he suffered minor injuries to his arm.  Even if the alleged use of force may have caused Plaintiff minor injury and pain, no constitutional violation occurred.  *See, e.g.*, Jones, 121 F.3d at 1460–61.

Based on the foregoing discussion, Plaintiff's allegation that his cell slot door was slammed against his arm and held for several seconds fails to state an excessive-use-of-force claim under the Eighth Amendment.  As no actionable event occurred, Plaintiff's related allegations that no proper investigation of the incident was conducted and that he was denied appropriate psychiatric and medical care likewise fail to state a claim for relief.  These claims, which Plaintiff has previously amended, should therefore be dismissed with prejudice.

4.    Psychiatric Needs

Plaintiff alleges that a policy should have been in place that required inmates being released from the TCU to be housed alone for ninety days.  According to Plaintiff, because such a policy was not implemented, after his discharge from the TCU he attempted to attack another inmate (¶ 21). Plaintiff further asserts that he was denied necessary psychiatric medications (¶ 22).  The court construes Plaintiff's allegations as asserting that Defendants were deliberately indifferent to his psychiatric needs, in violation of the Eighth Amendment.  To state a claim of deliberate indifference to a medical need, a plaintiff must allege: (1) a medical need that is serious; (2) deliberate indifference to that need by the defendants; and (3) causation between the defendants' indifference and the plaintiff's injury.  Youmans v. Gagnon, 626 F.3d 557, 563 (11th Cir. 2010) (per curiam).

Here, with respect to Plaintiff's allegation that he attempted to attack another inmate because he was not ready psychiatrically to be housed with another person but was for lack of a policy requiring otherwise, Plaintiff alleges no injury or harm to himself of any sort.  He therefore has failed to state an Eighth Amendment medical claim.  As Plaintiff has had the opportunity to amend this claim previously, the claim should be dismissed with prejudice.

Plaintiff also asserts that was denied needed psychiatric medications.  Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other

correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The PLRA's exhaustion requirement is mandatory and applies to all federal claims brought by any inmate.  *See* Woodford v. Ngo, 548 U.S. 81, 93, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006). Because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process prior to initiating suit.  Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (per curiam ); *see also* Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999).  Nevertheless, the "failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 215, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007).  If the allegations in the complaint, taken as true, demonstrate that a prisoner's claims are barred by an affirmative defense, however, the complaint is subject to dismissal for failure to state a claim upon which relief can be granted.  *Id.* at 215–16; *see also* Clark v. Georgia Bd. of Pardons & Paroles, 915 F.2d 636, 640–41 (11th Cir. 1990) (explaining that district court may dismiss prisoner's complaint "if [it] sees that an affirmative defense would defeat the action," including the prisoner's failure to exhaust "alternative remedies").

In the instant case, the alleged denial of psychiatric medications occurred in "February/March 2010," which was well after Plaintiff initiated this action in May 2009.  Thus it is clear from the face of the fourth amended complaint that Plaintiff could not have exhausted his administrative remedies concerning the incident prior to initiating this action.  Accordingly, this claim should be dismissed without prejudice because it is barred by the affirmative defense of failure to exhaust administrative remedies prior to bringing suit.  *See* Anderson v. Donald, 261 F. App'x 254, 256 (11th Cir. 2008) (per curiam) (affirming district court's sua sponte dismissal of prisoner's complaint because the complaint's allegations were sufficient to establish that plaintiff had failed to exhaust his administrative remedies); Okpala v. Drew, 248 Fed. App'x 72, 73 (11th Cir. 2007) (indicating that where the affirmative defense of failure to exhaust administrative remedies appears on the face of a prisoner's complaint, no claim for relief was stated; the complaint therefore must be dismissed

under the PLRA).[12]  Plaintiff's claim that he was denied psychiatric medications should be dismissed without prejudice to Plaintiff's raising it in a new civil rights action initiated after he has exhausted his administrative remedies.

     5.   <u>Mail Processing</u>

Plaintiff alleges that his legal and privileged mail addressed to "legal aid organization[s], bar associations, Fla. Dept. of Health, courts, among other places" (*see* ¶ 1, *supra*),  and from the "Fla. Dept. of Health, courts, among other places," was routinely opened and read outside his presence (*see* ¶ 2, *supra*; *see also* ¶¶ 23, 25, *supra*).  He further alleges that an FDOC official opened and retained legal/privileged mail that was attached to a grievance (¶ 3) and that officials interfered with his receipt of TAB publications (¶¶ 10–14, 24).

The Eleventh Circuit has observed that a prisoner's constitutional right of access to courts requires that properly identified legal mail may be opened only in the inmate's presence and only to inspect for contraband.  <u>Al-Amin v. Smith</u>, 511 F.3d 1317, 1325 (11th Cir. 2008).  In <u>Al-Amin</u>, the Eleventh Circuit further noted that the Supreme Court has "clarified that 'actual injury' is a constitutional prerequisite to an inmate's access-to-courts claim." *Id.* at 1332 (citing <u>Lewis v. Casey</u>, 518 U.S. 343, 349, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996)).  Therefore, "prison officials' actions that allegedly violate an inmate's right of access to the courts must have impeded the inmate's pursuit of a nonfrivolous, post-conviction claim or civil rights action." *Id.*  In other words, no constitutional violation occurs if the inmate is not harmed in some way as a result of his legal mail being opened outside of his presence.  "In order to show actual injury, a plaintiff must provide evidence of such deterrence, such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials." *Id.*; *see also* <u>Bass v. Singletary</u>, 143 F.3d 1442, 1445 (11th Cir. 1998).  Moreover, Plaintiff cannot show an injury unless he shows that the case he was unable to pursue had arguable merit.  <u>Wilson v. Blankenship</u>, 163 F.3d 1284, 1291 (11th Cir. 1998).  Here, Plaintiff does not allege that the complained-of treatment of his legal mail impeded

---

[12]  Amendment of this claim would be futile as under no additional facts could Plaintiff establish that he exhausted his administrative remedies prior to the initiation of this lawsuit.  *See* <u>Perez v. Wisconsin Department of Corrections</u>, 182 F.3d 532, 534–35 (7th Cir. 1999); <u>Underwood v. Wilson</u>, 151 F.3d 292, 296 (5th Cir. 1998); <u>Hattie v. Hallock</u>, 16 F. Supp. 2d 834, 836 (N.D. Ohio 1998). Moreover, the PLRA does not permit exhaustion of remedies while a case is pending.  *See* <u>Higginbottom</u>, 223 F.3d at 1261; <u>Miller</u>, 196 F.3d at 1193.

his pursuit of a nonfrivolous, post-conviction claim, or civil rights action, thus causing him actual injury. *Id.* at 1332. Plaintiff's allegations therefore do not state a claim of denial of access to the courts. As Plaintiff has had a chance to amend this claim previously, it should be dismissed with prejudice.

An inmate's allegations concerning the treatment of his mail may also implicate a free speech claim under the First Amendment. "Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment." Al-Amin, 511 F.3d at 1333, citing City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 427, 113 S. Ct. 1505, 1515–16, 123 L. Ed. 2d 99 (1993). The First Amendment also protects the right to receive and possess newspapers and similar publications. *See* Beard v. Banks, 548 U.S. 521, 543, 126 S.Ct. 2572, 165 L. Ed. 2d 697 (2006) (J. Stevens, dissenting). A prisoner retains these rights, balanced against prison security and administrative concerns. Turner v. Safley, 482 U.S. 78, 84–93, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987). Prison officials have more discretion to regulate incoming than outgoing mail because of the greater security risks inherent in materials coming into a prison. *Id.* at 413. Turner applies to regulations and policies regarding all incoming mail; therefore, regulations and policies involving incoming mail are "valid if [they] are reasonably related to legitimate penological interests." Turner, 482 U.S. at 89. With respect to outgoing non-attorney mail, the Supreme Court has held that prison officials may review and censor such inmate mail only if: "(1) the practice furthers an important or substantial governmental interest unrelated to the suppression of expression; and (2) the limitation of First Amendment rights is no greater than necessary or essential to protection of the governmental interest." Johnson v. Smith, 2011 WL 344085, *4 (N.D. Ga. 2011), citing Procunier v. Martinez, 416 U.S. 396, 412–13, 94 S. Ct. 1800, 40 L. Ed. 2d 224 (1974), *overruled on other grounds by* Thornburgh v. Abbott, 490 U.S. 401, 411, 413–14, 109 S. Ct. 1874, 104 L. Ed. 2d 459 (1989) (observing that outgoing personal correspondence ordinarily does not, by its nature, pose a serious threat to prison order and security). "While a prisoner has a right to be present when his legal mail is opened . . . an isolated incident of mail tampering is usually insufficient to establish a constitutional violation . . . . Rather, the inmate must show that prison officials 'regularly and unjustifiably interfered with'" the inmate's legal mail. Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) (citations and quotations omitted); *see also*, Al- Amin, 511 F.3d at 1334 (a prison's "pattern

and practice" of opening attorney mail outside the inmate's presence impinges upon his right to freedom of speech").  Thus, while the requirements of stating a viable free speech claim are less onerous than those for an access-to-courts claim,  Al-Amin, 511 F.3d at 1334 (observing that an inmate "need [not] allege any consequential injury (physical or otherwise) stemming from an alleged First Amendment violation aside from the violation itself" in order to state a claim) (internal citations omitted), and the standards for assessing outgoing and incoming mail claims by prisoners differ, generally speaking, allegations about unjustified limitations on or interference with a prisoner's incoming or outgoing mail may be sufficient to state a plausible free speech claim under the First Amendment.

In this case, Plaintiff's allegation that, outside of his presence, an FDOC employee opened and retained a sealed enveloped attached to a grievance that contained legal mail plainly does not state a viable claim (¶ 3, *supra*).  Plaintiff fails to identify the nature of the mail at issue (other than stating that it was addressed to a legal aid organization) and fails to explain how an employee's opening and retaining an exhibit attached to the grievance interfered with Plaintiff's ability to communicate.  In any event, by providing a copy of the document as an attachment to a grievance Plaintiff submitted for processing to the FDOC he waived any right to assert any privilege concerning it.  Quite naturally, the FDOC employee opened and retained the envelope attached to Plaintiff's grievance: doing so was a necessary and anticipated aspect of processing Plaintiff's grievance.  Likewise, Plaintiff's assertion that certain Defendants could have removed the spiral bindings from his TAB materials to permit their admission into the facility—but did not even though Plaintiff had so authorized—states no free speech claim (¶ 10).  To the extent Plaintiff's allegations imply that he would have been permitted to receive the texts at that time had the bindings been removed, the fact that the bindings were not removed as he had agreed to suggests, at most, negligent conduct.  Only a conscious disregard for the prisoner's rights that constitutes serious misconduct is actionable under § 1983.  Simple negligence is not. Thus, absent serious misconduct, what may ordinarily be a common law tort is not a constitutional violation actionable under § 1983.  Rhodes, 452 U.S. at 347.  These claims, which Plaintiff has previously had the opportunity to amend, should therefore be dismissed with prejudice.

As presented, Plaintiff's other allegations in which he asserts that Defendants regularly and without justification opened his legal and privileged mail outside his presence, treating it as routine mail, and precluded him from receiving or possessing TAB publications (*see* ¶¶ 1, 2, 11–14, 23–25), fail to give Defendants "fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555.  Plaintiff's allegations are too broad, conclusory, and vague, both in terms of dates and specific conduct, to state a free speech claim.  For example, Plaintiff identifies the confiscated or mishandled items involved with virtually no specificity, including with respect to whom in particular the mail was addressed to or sent from and the subject of the contents.  This is essential in order to be able to characterize the type of mail involved and thus the degree of protection to which it is entitled.  Moreover, Plaintiff cites only a span of years during which the alleged violations of his rights took place, not particular dates on which particular incidents occurred. Additionally, to the extent Plaintiff has cited dates subsequent to May 26, 2009 (the date Plaintiff deposited his initial complaint in the prison's internal mail system and thus considered the date of filing, *see* Doc. 1 at 7), claims arising from those allegations could not have been administratively exhausted.  As discussed previously, claims that have not been administratively exhausted prior to the filing of the action are subject to dismissal.  Also, to the extent Plaintiff cites dates prior to May 26, 2005, claims arising from such allegations may be barred by the four-year statute of limitations applicable to this case.[13]

Although Plaintiff's allegations of free speech violations in Document # 93 at ¶¶ 1, 2, 11–14, and 23–25 therefore may be subject to dismissal for failure to state a claim for relief, the court cannot say with certainty that the deficiencies could not be remedied with further amendment.  Accordingly, as to those allegations *only*, dismissal should be without prejudice and with leave to file an amended complaint that sets forth additional facts that adequately support Plaintiff's free speech claims.

---

[13] Because section 1983 does not contain a specific statute of limitations, 42 U.S.C.A. § 1988 directs courts to select and apply the most appropriate or analogous state statute of limitations.  The Supreme Court has stated that courts should select the statute of limitations in each state that applies to tort actions for the recovery of damages for personal injury.  Wilson v. Garcia, 471 U.S. 261, 276, 105 S. Ct. 1938, 85 L. Ed. 2d 254 (1985).  Further, the Court stated that the statute, once selected, should govern all section 1983 actions arising in that state.  *Id*. at 275; *see also* Jones v. Preuit & Mauldin, 763 F.2d 1250, 1252 (11th Cir. 1985) (citations omitted).  The applicable statute of limitations in Florida, where Plaintiff's claims arose, is four (4) years.  Chappell v. Rich, 340 F.3d 1279, 1283 (11th Cir. 2003); *see* Fla. Stat. § 95.11(3).

Plaintiff may also include supplemental state law claims in the fifth amended complaint.  If Plaintiff fails to file a fifth amended complaint that fully complies with these limitations and all of the instructions set out in the complaint form and the court's prior orders regarding amendment, without giving further notice to Plaintiff or any additional opportunities to amend, this court will recommend immediate dismissal of this action, with prejudice, to the district court.

V.     CONCLUSION

Based upon the foregoing, the undersigned concludes that, to the extent they have been asserted, Plaintiff's claims asserting the deprivation of property, denial of due process, harassing cell searches, a retaliatory DR, heightened security status, use of excessive force, and denial of access to courts should be dismissed with prejudice.  The claim that Plaintiff attacked another prisoner because he was not housed alone for ninety days following his release from the TCU should also be dismissed with prejudice; his claim that he was denied psychiatric medications should be dismissed without prejudice.  Plaintiff's free speech claims which arise from the processing of his mail and are based on the allegations that a document attached to a grievance was improperly opened and retained and that spiral bindings were not removed from Plaintiff's TAB materials should be dismissed with prejudice.  Plaintiff's other free speech claims should be dismissed without prejudice, with leave to file an amended complaint that addresses only those allegations and such supplemental state law claims as Plaintiff may wish to present.

Accordingly, it is respectfully **RECOMMENDED** that:

1.      Plaintiff's deprivation of property, denial of due process, harassing cell searches, retaliatory DR, heightened security status, use of excessive force, and access-to-courts claims (as set forth in Document # 93 at ¶¶ 1–2, 4–9, 11–13, and 15–20) be **DISMISSED, with prejudice**.

2.      Plaintiff's deliberate indifference claim (as set forth in Document # 93 at ¶ 21) asserting that he attacked another prisoner because he was not housed alone for ninety days following his release from the TCU be **DISMISSED, with prejudice**; his deliberate indifference claim (as set forth in Document # 93 at ¶  22) asserting that he was denied psychiatric medications be **DISMISSED, without prejudice**.

3.      Plaintiff's free speech claims under the First Amendment (as set forth in Document # 93 at ¶ 3 and ¶ 10) based on his allegations that a document attached to a grievance was improperly opened and retained and that spiral bindings were not removed from his TAB materials be **DISMISSED**, **with prejudice**.

4.      Plaintiff's additional free speech claims concerning the processing of his mail (as set forth in Document # 93 at ¶¶ 1, 2, 11–14, and 23–25) be **DISMISSED**, **without prejudice**, with leave to file an amended complaint that addresses only those allegations and any supplemental state law claims.  Should the district court adopt this Report and Recommendation, Plaintiff shall file his fifth amended complaint within thirty (30) days of the date of adoption.

At Pensacola, Florida, this 27th day of March 2012.


/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**