IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

NYKA O'CONNOR,
        Plaintiff,

vs.                                  Case No.: 3:09cv224/WS/EMT

M.L. CARNAHAN, et al.,
        Defendants.

_____/

## ORDER, REPORT AND RECOMMENDATION[1]

Plaintiff in this action filed pursuant to 42 U.S.C. § 1983 is a Florida Department of Corrections ("FDOC") inmate who proceeds pro se and prepaid the filing fee in full.[2] The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)(C); and Fed. R. Civ. P. 72(b). Now before the court is the motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), 42 U.S.C. § 1997e(a), and 42 U.S.C. § 1997e(e) filed by Defendants Kristin Gavin ("Gavin"), Jennifer Haas ("Haas"), former FDOC Secretary Kenneth S. Tucker ("Tucker"), and current FDOC Secretary Michael E. Crews ("Crews") (doc. 155).[3] Plaintiff has

---

[1] The court issued an Order and Report and Recommendation on October 23, 2013 (doc. 167), which on November 18, 2013, the court vacated (doc. 172). The instant Order and Report and Recommendation has been entered in its stead.

[2] Having prepaid the filing fee in full, Plaintiff does not proceed as a pauper under 28 U.S.C § 1915. Nevertheless, his complaint remains subject to the Prison Litigation Reform Act ("PLRA"). *Inter alia*, the PLRA authorizes dismissal of a complaint "in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," on the basis that the complaint is frivolous, malicious, or fails to state a claim, regardless whether the plaintiff has paid the filing fee. *See* 28 U.S.C § 1915A.

[3] Plaintiff names a total of eleven Defendants (doc. 120 at 1–4). Plaintiff is responsible for service of the complaint, but the docket reflects that he has not effected service on nine of the named Defendants ("the unserved Defendants"), including former FDOC Secretary Walter McNeil ("McNeil") in his individual capacity. On December

responded (doc. 164).[4] Upon consideration, for the reasons given below the court recommends that Defendants' motion to dismiss be granted.

## I.    PROCEDURAL HISTORY

The lengthy procedural history of this case is outlined in the Report and Recommendation entered March 27, 2012, and need not be repeated here (*see* doc. 95, adopted by district court on June 15, 2012, at doc. 103).[5] In short, Plaintiff is now incarcerated at Union Correctional Institution but was housed at Santa Rosa Correctional Institution ("SRCI") when the events giving rise to this action occurred. The court permitted Plaintiff to amend his complaint three times in an effort to state a viable claim for relief (docs. 7, 47, 86). On June 15, 2012, on this court's recommendation, the district court dismissed with prejudice the majority of Plaintiff's claims in his fourth amended complaint and dismissed other claims without prejudice; it also authorized Plaintiff to file an amended complaint limited to free speech claims involving the processing of his mail and related state law claims (docs. 95, 103). The undersigned rejected Plaintiff's fifth amended complaint (doc. 116), but ordered service of Plaintiff's sixth amended complaint, which names all Defendants in their official and individual capacities (doc. 123). Service on Defendant Haas (identified by Plaintiff as an assistant warden at SRCI), Defendant Gavin (identified as a SRCI mailroom worker), and Tucker was effected

---

3, 2012, service was effected on then-FDOC Secretary Tucker who, pursuant to Fed. R. Civ. P. 25(d), was automatically substituted for McNeil in his official capacity only. Similarly, upon succeeding Tucker as FDOC Secretary, Defendant Crews was automatically substituted as Defendant in his official capacity only. Defendants represent that their motion to dismiss is filed on behalf of Tucker, apparently in his individual capacity only, but Plaintiff has not named Tucker as a Defendant. Thus, in neither his official nor his individual capacity is Tucker properly before the court.

[4] Plaintiff initially submitted his handwritten response to Defendants' motion to dismiss on May 17, 2013 (doc. 162). The extended due date for filing the response was May 22, 2013 (doc. 161), so the response was timely. On June 6, 2013, Plaintiff submitted a typed version of the response, explaining that "the handwritten copy . . . was probably not very legible" (doc. 164 at 24). Although the typed version of the response was submitted after the due date for the response, as the handwritten and typed versions appear to be essentially the same in substance, the court has considered the easier-to-read typed version (doc. 164) and disregarded the handwritten one (doc. 162). Plaintiff has also filed a "Supplement Appendix with Exhibits [sic]" (doc. 163), which the court addresses below, and a "Motion for Leave to Amend <u>If</u> Necessary & Supplement to Reply" (doc. 166) (emphasis in original), which the court shall deny, as no further amendment of the complaint is needed or shall be permitted.

[5] The page numbers cited in this Report refer to numbers assigned by the court's electronic docketing system, rather than those the parties may have designated.

by FDOC special appointees on December 4, 2012 (docs. 129, 130).   The other eight named
Defendants—who include M.L. Carnahan ("Carnahan"), a SRCI mailroom worker; the FDOC
Literature Review Committee ("the FDOC LRC"); SRCI Warden Ellis ("Ellis"); SRCI Sergeant Davis
("Davis"); SRCI Correctional Officer Cobbs ("Cobbs"); SRCI Correctional Officer Carmichael
("Carmichael"); SRCI mailroom worker Blocker ("Blocker"); and SRCI mailroom worker
"LHB"—have not been served with process, and they have not appeared.[6]  As noted, former FDOC
Secretary McNeil also has not been served with process in his individual capacity and has not
appeared.  After Defendants Gavin, Haas, Tucker, and Crews filed their motion to dismiss (doc. 155),
Plaintiff responded (docs. 163, 164), as noted *supra*.[7]

---

[6]  Initially, in an effort to expedite service of this aged case, the court directed service of the sixth amended
complaint by special appointee pursuant to Fed. R. Civ. P. 4(c)(3) (giving court discretion to order service by the
United States Marshals Service ("USMS") or special appointee) (doc. 123).  Following service upon Defendants Haas,
Gavin, and Tucker, Defendants objected to the use of the FDOC's special appointees to serve process and  moved to
tax Plaintiff with the costs of service (doc. 134).  By order dated February 25, 2013, the court granted Defendants'
motion and directed Plaintiff to pay the costs of service and other processing costs (doc. 146).  The court also
informed Plaintiff that if he wished to proceed against the other Defendants he must inform the court that he had
arranged for service at his own expense, at which time summonses would be issued; alternatively, the court stated that
it would consider directing the USMS to effect service if Plaintiff represented to the court that he would pay for such
services, and it advised Plaintiff of the hourly and other costs of service by the USMS.  Plaintiff moved to vacate this
court's February 25, 2013, order (doc. 149), which the court denied (doc. 150).  Plaintiff appealed this order (doc.
153), as he has frequently done in this case (both with respect to the district court and the Eleventh Circuit, resulting
in numerous delays).  The district court denied his appeal (doc. 154), a denial which Plaintiff did not further pursue.
Plaintiff paid the taxed costs of service (*see* doc. 151).

[7]  Although Defendants submitted exhibits with their motion to dismiss, and Plaintiff submitted exhibits with
his response, the court concludes that the motion does not need to be converted into a motion for summary judgment.
*See* Day v. Taylor, 400 F.3d 1272, 1275–76 (11th Cir. 2005) (stating that a district court "generally must convert a
motion to dismiss into a motion for summary judgment if it considers materials outside the complaint").
     First, in ruling on a motion to dismiss pursuant to 42 U.S.C. § 1997e(a), a court may consider evidence
outside the pleadings to determine whether a plaintiff has exhausted his administrative remedies.  *See* Bryant v. Rich,
530 F.3d 1368, 1374–77 (11th Cir. 2008) (discussing the district court's authority to consider extraneous facts
relating to exhaustion in the context of 42 U.S.C. § 1997e(a)).  Thus conversion is not required based on the court's
consideration of Defendants' Exhibit A (doc. 155-1), which is a copy of a motion for sanctions against Plaintiff that
was filed in a state court case.  Second, Defendants' Exhibit B is an affidavit in support of Defendants' contention that
Plaintiff failed to file a notice with the Florida Department of Financial Services regarding his state law negligence
claim (doc. 155-2).  With respect to an official capacity claim, the complaint must allege compliance with Fla. Stat.
§ 768.28(6)(a), which requires a claimant to present his claim in writing to the appropriate agency within three years
after such claim accrues, *see* Menendez v. N. Broward Hosp. Dist., 537 So. 2d 89, 91 (Fla. 1988), at least in general
terms.  *See* Glace v. Lower Fla. Keys Hosp. Dist., 481 So. 2d 509 (Fla. 1985).  Exhibit B therefore could be central
to the timeliness of Plaintiff's official capacity negligence claims.  Additionally, in his reply Plaintiff does not dispute

## II.   ALLEGATIONS AND RELIEF SOUGHT IN THE SIXTH AMENDED COMPLAINT

Plaintiff includes the following allegations in the sixth amended complaint. At all times relevant to his claims, Plaintiff was a "Mental patient at SRCI Inpatient or Outpatient Mental care on CM [close management]" (doc. 120, Statement of Facts, ¶ 1). On approximately September 30, 2008, Defendant Carnahan impounded and refused to deliver "law books" that had been mailed to Plaintiff by The American's Bulletin ("TAB"), on the ground the books included "information on how to file fraudulent papers against officials" (*id.*, ¶¶ 2, 3). Defendant Carnahan denied Plaintiff's grievances concerning the impounded books on September 30 and October 2, 2008 (*id.*, ¶¶ 4, 5). Also on October 2, 2008, Defendant FDOC LRC "approved Defendant Carnahan's banning" of the books, "which affects <u>ALL</u> FDOC Institutions" (*id.*, ¶ 6) (emphasis in original). Due to the rejection of the books, Plaintiff mailed them to his home at his own expense (*id.*, ¶ 7).

On approximately October 3, 2008, Defendants Ellis, Haas, and Carnahan wrongly asserted that Plaintiff possessed a book titled <u>Redemption Manual</u>[8] (doc. 120, Statement of Facts, ¶ 8). Also on October 3, 2008, in the course of searching Plaintiff's possessions for the <u>Redemption Manual</u>, Defendants Davis, Cobbs, and Carmichael discovered and confiscated Plaintiff's TAB newspaper (*id.*, ¶ 9). Defendant Haas impounded the TAB newspaper on October 9, 2008 (*id.*, ¶ 10), which Plaintiff subsequently mailed to his home at his own expense (*id.*, ¶ 11). Also, on or about October 9, 2008, Defendant Haas banned all incoming TAB publications, which resulted in Plaintiff's inability to receive TAB materials for which he had already paid (*id.*, ¶ 12). On approximately November 14, 2008, Defendant FDOC LRC "approved Haas['] banning" all incoming TAB materials, which prohibited "<u>ALL</u> FDOC inmates from rec[ei]ving TAB materials" (*id.*, ¶ 13) (emphasis in original).

---

the truthfulness of the assertions made in Exhibit B. Accordingly, the court may consider this exhibit without the need to convert the motion to dismiss into a motion for summary judgment. Third, none of Plaintiff's exhibits—which include an inmate property return receipt dated December 30, 2004; an illegible inmate impounded personal property list; and a copy of Plaintiff's paralegal diploma (doc. 163; *see also* doc. 164 at 22–23, discussion of exhibits in doc. 163)—are material to the court's analysis, and the court does not consider them. Thus, none of the parties' exhibits necessitate conversion of the motion to dismiss into a motion for summary judgment.

[8]   The full title of this text appears to be <u>Redemption, 4th Ed. Manual: How to Become a Secured/Party Creditor</u>. *See* <u>Strickland v. Caruso</u>, Case No. 1:08-cv-94, 2010 WL 3890645, at *1 (W.D. Mich. 2010). The text is published by The American's Bulletin. *Id.*

On April 23, 2009, Defendant McNeil implemented "FAC 33-210.102(8)(d), which permitted incoming legal mail to be opened & read outside the inmate[']s presence, until [the] policy was invalidated months later" (doc. 120, ¶ 14). Due to this rule, "on numerous occasions Carnahan, Gavin, Blocker, [and] LHB[,] among other Mailroom staff[,] opened & read [Plaintiff's] legal mail from this court concerning the case at bar" (*id.*, ¶ 15). Defendant Carnahan responded to Plaintiff's grievances concerning the "mishandled" legal mail (*id.*, ¶ 16).

Based on these allegations, Plaintiff asserts numerous claims against the various Defendants under federal and state law. Plaintiff claims that Defendants' actions violated his rights under the First Amendment of the United States Constitution; additionally, Plaintiff alleges claims based on Article 1, § 4 and Article III of the Florida Constitution, as well as a variety of state statutes and rules, namely Fla. Stat. §§ 768.28, 943.13(7), 944.09, and 20.315, and Fla. Admin. Code Rules 33-208.002(3)(a)(6)(12)(19), 33-501.401, and 33-10.[9] As relief, Plaintiff seeks "damages including: punitive, compensatory, nominal[,] Mental/Emotional [sic]" (doc. 120 at 11). He also requests declaratory and injunctive relief, costs, attorneys' fees, the appointment of counsel, and any other relief the court deems appropriate (*id.* at 11, 17).

## III.    DISCUSSION

In their motion Defendants make numerous arguments for dismissal of Plaintiff's § 1983 claims or for other forms of relief. The arguments include, in the order in which the court addresses them, that Plaintiff's failure to disclose on the court's complaint form seventy-five prior cases he filed in federal and state courts constitutes abuse of the judicial process, warranting dismissal of this action pursuant to § 1915A(b)(1)[10]; that Plaintiff failed to exhaust administrative remedies with respect to

---

[9]  Plaintiff apparently asserts that Defendants' conduct also constitutes a free speech violation based on the denial of "self-help" under the Uniform Commercial Code ("UCC") (*see*, e.g., Statement of Claims, ¶ 4a). The UCC is simply a model uniform act without independent legislative force that was designed to harmonize the laws of sales and certain other commercial transactions among the fifty states. In some form, all fifty states have adopted the UCC. Thus, to the extent Plaintiff relies on the UCC to base an independent free speech claim, his reliance is misplaced. The court finds that Plaintiff's free speech claim under the First Amendment is sufficient to encompasses any contention that the publications he was denied, specifically TAB publications, are in some way UCC-related.

[10]  Defendants cite 28 U.S.C. § 1915(e)(2)(B)(i), but that provision applies to persons proceeding in forma pauperis (doc. 155 at 7). The court considers the argument under § 1915A(b)(1), the appropriate provision.

his § 1983 claim against Defendant Gavin and thus that claim should be dismissed pursuant to § 1997e(a); that Plaintiff's allegations concerning the handling of his mail fail to state a free speech claim under the First Amendment against Defendants Haas and Gavin, requiring dismissal under Rule 12(b)(6); that Plaintiff's claims for nominal, compensatory, and punitive damages are barred by § 1997e(e) because he has not alleged any physical injury; and that Defendants are entitled to Eleventh Amendment immunity on Plaintiff's § 1983 claims for damages in their official capacities. With respect to the state law claims, Defendants contend that § 768.28(9), Fla. Stat., bars Plaintiff's negligence claims against them in their individual capacities; that Plaintiff failed to satisfy the notice requirement of § 768.28(6)(a), Fla. Stat., which makes an official capacity negligence claim against Defendant Crews premature; that Plaintiff has failed to plead the elements of a prima facie case of fraud against Defendant Haas, warranting dismissal pursuant to Rule 12(b)(6); and that, because no private cause of action exists, Plaintiff's claims alleging various statutory and administrative rule violations should be dismissed pursuant to Rule 12(b)(6). In a lengthy response, Plaintiff challenges every ground for dismissal or limitation on the relief he seeks (doc. 164).

<u>Abuse of the Judicial Process</u>

In the absence of any basis for excusing a plaintiff's lack of candor, the failure to disclose and truthfully describe previous lawsuits as clearly required on the court's prisoner civil rights complaint form warrants dismissal of the complaint for abuse of the judicial process. *See* <u>Redmon v. Lake County Sheriff's Office</u>, 414 F. App'x 221, 225 (11th Cir. 2011) (indicating that court may impose sanctions, including dismissal of an action, "if a party knowingly files a pleading that contains false contentions."). In this case, Plaintiff acknowledges on the complaint form that he filed previous lawsuits, and he lists approximately thirty-five such cases, in addition to referring the court to the dockets of numerous other federal and state courts for a more complete list (doc. 120 at 6–8). Plaintiff notes that he previously filed other cases as well but states that he was unable to list them all because he did not have his personal property. He also submits that it is a "burden" for him to recall all of his prior cases "while a psych-4 patient on Psych Meds" (*id.* at 8).

That Plaintiff is under any "burden" from medications he takes that may adversely affect his memory is not apparent from his numerous, detailed filings in this case. That said, Plaintiff did not

lie on the complaint form or otherwise make false contentions about having filed additional cases; rather, he acknowledged that he had done so but said he could not remember all of them, although he did list about thirty-five such cases and identify numerous other courts in which additional cases had been filed.  He also stated on the form that he did not have all of his legal papers available to him, which—especially in light of the extraordinary number of cases involved—arguably constitutes a basis for excusing his failure to disclose the entirety of the multitude of cases.  Accordingly, the court is not prepared to conclude, *in this instance*, that Plaintiff's failure to identify every case he filed in state and federal court rises to the level of abuse of the judicial process such that dismissal as a sanction is warranted.  Thus, under the specific circumstances of this case, the court declines to recommend dismissal of this action as malicious pursuant to § 1915A(b)(1).

<u>Failure to Exhaust</u>

Title 42 U.S.C. § 1997e provides, in relevant part:  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion of all available administrative remedies is a mandatory pre-condition to suit.  *See* <u>Booth v. Churner</u>, 532 U.S. 731, 739, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001); *see also* <u>Porter v. Nussle</u>,  534 U.S. 516, 524–25, 122 S. Ct. 983, 988, 152 L. Ed. 2d 12 (2002).  The requirement is not subject to waiver by a court, or futility or inadequacy exceptions.  <u>Booth</u>, 532 U.S. at 741 n.6; <u>McCarthy v. Madigan</u>, 503 U.S. 140, 112 S. Ct. 1081, 117 L. Ed. 2d 291 (1992) ("Where Congress specifically mandates, exhaustion is required."); <u>Alexander v. Hawk</u>, 159 F.3d 1321 (11th Cir. 1998).  Because the plaintiff must exhaust his administrative remedies fully before commencing his lawsuit in federal court, any claims that were not exhausted before the plaintiff filed his original complaint must be dismissed even if the plaintiff exhausts his administrative remedies at some future date.  <u>Smith v. Terry</u>, 491 F. App'x 81, 83–84 (11th Cir. 2012).

A motion to dismiss for failure to exhaust administrative remedies may implicate two steps. <u>Turner v. Burnside</u>, 541 F.3d 1077, 1082 (11th Cir. 2008).  First, the court looks to the factual allegations in the defendant's motion, and those in the plaintiff's response, if any.  *Id*.  If the

allegations conflict, the court accepts the plaintiff's version as true. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.*; *see also* Bryant v. Rich, 530 F.3d at 1373–74. If the complaint is not subject to dismissal at the first step, "the court proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082 (citing Bryant, 530 F.3d at 1373–74, 1376). Upon making findings on the disputed issues of fact, the court then decides whether, under those findings, the plaintiff has exhausted his available administrative remedies. *Id.* at 1083. "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id.* at 1082.

In the sixth amended complaint Plaintiff alleges that Defendant Gavin and others unlawfully "opened & read [Plaintiff's] legal mail from this court concerning the case at bar" (doc. 120, Statement of Facts, ¶ 15). Given the reference to "this case," which Defendants reasonably take to mean the instant case, or Case No. 3:09cv224/WS/EMT filed in May 2009, Defendants argue that it is self-evident that Plaintiff could not have exhausted his federal claim against Defendant Gavin *prior to* filing suit. Responding, Plaintiff contends that his reference to "this case" is meant to encompass the same facts and administratively exhausted claims that he presented in an earlier action that "was initially filed in about 2005 under a different case number, then subsequently refiled on more than one occasion . . . ." (doc. 164 at 9). Defendants are correct, of course, that Plaintiff could not have administratively exhausted his claim that his legal mail was mishandled prior to bringing the instant case, Case No. 3:09cv224/WS/EMT, on May 26, 2009, if the complained-of actions took place after that date. But Plaintiff contends that the complained-of conduct occurred earlier—and that he exhausted the claim arising from that conduct prior to May 26, 2009. As the parties' positions conflict, as required by Turner the court accepts Plaintiff's version of the facts as true. Plaintiff's claim that his legal mail was mishandled therefore is not subject to dismissal at the first step of the analysis. Turning to step two, the court notes that Plaintiff has filed nothing in support of his assertion that he previously administratively exhausted his remedies on this claim.[11] Importantly, however,

---

[11] To establish that he exhausted his administrative remedies, Plaintiff seeks to "incorporate by reference all grievances filed re the case at bar" from 2005 until Case No. 3:09cv224/WS/EMT was initiated in 2009, as well as

Defendants—who bear the burden of proof—likewise have not attempted to support their contrary assertion with any evidence. The court therefore must conclude that Defendants have not satisfied their burden of establishing that Plaintiff failed to exhaust his administrative remedies prior to bringing this suit.[12] Dismissal pursuant to § 1997e(a) of Plaintiff's claim that his legal mail was opened and read outside his presence therefore is not appropriate.

Failure to State a Claim for Relief

A complaint is subject to dismissal under Rule 12(b)(6) if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quotation marks omitted). A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). When considering a motion to dismiss for failure to state a claim, the court must accept all allegations in the complaint as true and construe the facts in the light most favorable to the plaintiff. Lopez v. Target Corp., 676 F.3d 1230, 1232 (11th Cir. 2012). The court is not, however, bound to accept as true "'a legal conclusion couched as a factual allegation.'" Iqbal, 556 U.S. at 678 (citation omitted). Although pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and are liberally construed, Bingham v. Thomas, 654 F. 3d 1171, 1175 (11th Cir. 2011), in civil rights cases "[m]ore than mere conclusory notice pleading is required . . . ." Gonzalez

---

the relevant "FDOC grievance logs" (doc. 164 at 10). Plaintiff may not incorporate by reference exhibits he has filed in other cases. Even if the court agreed to take judicial notice of the exhibits Plaintiff describes, he has not identified the case number(s) of the cases he claims are implicated, much less where in the records of those cases the relevant grievances might be located.

[12] Given that Defendants did not submit any evidence in factual support of their argument for dismissal on the ground of failure to exhaust administrative remedies, it is not surprising that they did not request an evidentiary hearing on this issue. The court is aware of no basis for scheduling a hearing in this case.

v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003) (citation and internal quotation marks omitted).  A civil rights complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory.  *Id.*

Defendant Haas

Plaintiff alleges that Defendant Haas falsely asserted that Plaintiff possessed the <u>Redemption Manual</u>, impounded his TAB newspaper, and banned all incoming TAB publications (doc. 120, ¶¶ 8, 10, 12).

An inmate's allegations concerning the treatment of his mail may implicate a free speech claim under the First Amendment.  "Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment."  <u>Al-Amin v. Smith</u>, 511 F.3d 1317, 1333 (11th Cir. 2008), citing <u>City of Cincinnati v. Discovery Network, Inc.</u>, 507 U.S. 410, 427, 113 S. Ct. 1505, 1515–16, 123 L. Ed. 2d 99 (1993).  The First Amendment also protects the right to receive and possess newspapers and similar publications.  *See* <u>Beard v. Banks</u>, 548 U.S. 521, 543, 126 S. Ct. 2572, 165 L. Ed. 2d 697 (2006) (J. Stevens, dissenting).  A prisoner retains these rights, balanced against prison security and administrative concerns.  <u>Turner v. Safley</u>, 482 U.S. 78, 84–93, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987).[13]  The Sixth Circuit has held that UCC-related materials are not "legal mail" and are not subject to heightened review when withheld, but the court nevertheless applied the <u>Turner v. Safley</u> factors to conclude that the defendants' policy barring such materials was overbroad.  <u>Jones v. Caruso</u>, 569 F.3d 258, 268 (6th Cir. 2009).

The FDOC's Admissible Reading Material Rule, Fla. Admin. Code r. 33-501.401, provides for the screening and impoundment of incoming mail.  Pursuant to Rule 33-501.401(3), inmates may receive and possess publications unless a publication is found "to be detrimental to the security, order or disciplinary or rehabilitative interests of any institution of the department . . . , or when it is

---

[13]  The four factors identified by the <u>Turner</u> Court include:  (1) whether a rational connection exists between the prison policy [or] regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.  <u>Turner</u>, 482 U.S. at 89–90.

determined that the publication might facilitate criminal activity." At the time of the events at issue in this case, as now, Rule 33–501.401(8)(a) authorized the designation of the assistant warden to impound publications she deemed inadmissible, pending a determination by the LRC. The impoundment of a publication at any FDOC facility results in the publication being impounded at all correctional facilities until such time as the LRC reviews the impoundment action. Rule 33-501.401(8)(c), Fla. Admin. Code. The LRC is responsible for reviewing the impounded publication and making the final decision on admissibility. Rule 33-501.401(14), Fla. Admin. Code. The same procedure for impoundment and for review by the LRC applies to publications found in an inmate's property. Rule 33-501.401(9), Fla. Admin. Code.

Plaintiff's allegation that Defendant Haas falsely asserted that Plaintiff possessed the Redemption Manual, causing his cell to be searched, does not implicate Plaintiff's right to free speech under the First Amendment. To the extent it implicates a claim that Plaintiff was subjected to a harassing cell search, the district court previously dismissed this claim with prejudice (doc. 103, adopting Report and Recommendation (doc. 95)). Plaintiff's allegation that Defendant Haas banned all incoming TAB publications likewise fails to state a claim for relief under the First Amendment. Under the relevant regulation, Defendant Haas did not have the authority to make and was not responsible for making the decision to permanently ban publications: that authority and duty were within the purview of the FDOC LRC. Rule 33-501.401(14), Fla. Admin. Code. These two allegations against Defendant Haas therefore raise no viable claim.[14] The court further concludes that Plaintiff's allegation that Defendant Haas violated his right to free speech by impounding his TAB

---

[14] Plaintiff does not challenge the facial constitutionality of the FDOC's rules and procedures for impounding and reviewing publications, and his allegations do not suggest that Defendant Haas impounded the TAB newspaper other than in conformance with Rule 33-501.401. Even if Plaintiff had alleged in the instant complaint that Defendant Haas failed to comply with the requirements of Rule 33-501.401, the court has previously addressed and dismissed with prejudice any Fourteenth Amendment due process claim concerning the handling of Plaintiff's mail (doc. 103, adopting Report and Recommendation (doc. 95)). A prison official's temporary impoundment of a publication pending review by an administrative body such as the LRC—in compliance with the FDOC's rules and procedures for such actions—does not amount to a due process violation.

newspaper on October 9, 2008, likewise is insufficient to state a First Amendment claim.[15]  An isolated incident of interference with a prisoner's mail generally is insufficient to establish a constitutional violation.  Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003).  Rather, the inmate must show that a prison official "regularly and unjustifiably interfered" with the inmate's incoming mail. *Id.* (citations omitted); Huey v. Philbin, Case No. 7:12-cv-97 (HL), 2013 WL 3816684, at *6 (M.D. Ga. July 22, 2013) (stating that "Plaintiff's allegation that on one occasion he did not receive his American's Sovereign Bulletin does not rise to the level of a constitutional violation, and therefore Plaintiff has failed to state a First Amendment claim"); Pro v. Bandy, Case No. 2:08-cv-0175-RWS, 2008 WL 4445080, at *3 (N.D. Ga. Sept. 25, 2008) (stating that "allegations of sporadic interference with incoming mail are insufficient to state a First Amendment claim" and finding plaintiff's failure to receive a newspaper on four occasions did not state a First Amendment claim); McKinnon v. James, No. Civ. A. 3:03CV2274/SRU, 2005 WL 1074466, at *3 (D. Conn. May 5, 2005) ("To state a claim for the violation of [the First Amendment right to free flow of mail] . . . an inmate must allege more than a single instance of interference with his mail.").  Plaintiff's allegations against Defendant Haas do not reflect that she "regularly and unjustifiably" interfered with Plaintiff's mail; rather, the interference by Defendant Haas of which Plaintiff complains occurred on only one occasion.  Davis, 320 F.3d at 351.  This claim for relief therefore fails.

---

[15]  Insofar as the individual members of the LRC are answerable to Plaintiff's claim that the FDOC LRC improperly banned his TAB publications, Plaintiff has not effected service on the LRC and thus no members of that body are before the court.  The court does not address Plaintiff's claims against the FDOC LRC.  Additionally, as Plaintiff has not served former FDOC Secretary McNeil in his individual capacity, the court does not address any claims against him.

For all of the above reasons, Plaintiff's claims under the First Amendment against Defendant Haas are without merit and are due to be dismissed.[16]  As Plaintiff previously has had numerous opportunities to amend his claims against Defendant Haas, dismissal should be with prejudice.

<u>Defendant Crews and Defendant Gavin</u>

Plaintiff alleges that on April 23, 2009, the FDOC Secretary implemented Rule 33-210.102(8)(d), Fla. Admin. Code, "which permitted incoming legal mail to be opened & read outside the inmate[']s presence, until [the] policy was invalidated months later" (doc. 120, Statement of Facts, ¶ 14).  Plaintiff further alleges that, based on this Rule, "on numerous occasions" Defendant Gavin, along with certain of the unserved Defendants, "opened & read [Plaintiff's] legal mail from this court concerning the case at bar" (*id.*, ¶ 15).[17]

In the Eleventh Circuit, incoming court mail is considered legal mail.  *See* <u>Taylor v. Sterrett</u>, 532 F.2d 462, 475–76 (5th Cir. 1976) (holding that, in the context of an access to court claim, prison officials were not entitled to read an inmate's legal mail, including incoming court mail).[18]  *But see* <u>Keenan v. Hall</u>, 83 F.3d 1083, 1094 (9th Cir. 1996) (indicating that because an inmate's incoming court mail is largely a matter of public record, it should not be deemed legal mail); <u>Martin v. Brewer</u>,

---

[16] Although the impact of a First Amendment violation must ultimately be weighed against the interests of effective prison administration, *see* <u>Procunier v. Martinez</u>, 416 U.S. 396, 413, 94 S.Ct. 1800, 40 L. Ed. 2d 224 (1974), *overruled on other grounds by* <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 109 S. Ct. 1874, 104 L. Ed. 2d 459 (1989), the court is unable to make that determination on Defendants' motion to dismiss.  Defendants mention <u>Turner v. Safley</u> and imply that TAB publications may provide instruction in the commission of criminal activity, which is a valid reason under Rule 33-501.401(3), Fla. Admin. Code, to deny inmates such mail (*see* doc. 155 at 14 & 15 n.3).  Defendants fail, however, to analyze the facts of this case under the four <u>Turner v. Safley</u> factors.  More specifically, other than noting that the temporary impoundment of Plaintiff's newspaper did not violate his rights (*see id.*, at 16), they have not argued that Defendant Haas' impoundment of the newspaper at issue did not infringe liberties protected by the First Amendment or, even if it did, that such infringement was reasonable in light of legitimate penological concerns.  In this instance, however, it is unnecessary for the court to consider the <u>Turner v. Safley</u> factors because Plaintiff's allegation that Defendant Haas interfered with his possession of his TAB newspaper on a single occasion is not sufficient to state a claim for relief.

[17] In the sixth amended complaint Plaintiff alleges his legal mail was improperly opened and read, but he does not specifically assert this was done outside his presence.  In his third amended complaint, however, which was signed under penalty of perjury, Plaintiff alleged that his mail from the court was opened outside his presence (doc. 86 at 17).  The court therefore accepts this additional allegation as part of the facts of his claim.

[18] In <u>Bonner v. Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*), the newly created Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down before October 1, 1981.

830 F.2d 76, 78 (7th Cir. 1987) (same); *see also* <u>McCain v. Reno</u>, 98 F. Supp. 2d 5, 7–8 (D.D.C. 2000) (the Constitution does not require same treatment for court mail as for attorney mail). In <u>Al-Amin</u>, in addressing a prisoner's attorney mail claim, the Eleventh Circuit concluded that the factors outlined in <u>Turner</u>, *supra*, weighed in the plaintiff's favor and did not undermine the holding in <u>Taylor</u> that inmates have a constitutionally protected right to have their properly marked attorney mail opened in their presence. <u>Al-Amin</u>, 511 F.3d at 1334. The <u>Al-Amin</u> court was precise in limiting its holding to the facts before it. *Id.*, at 1326 n.19 (stating that "[a]lthough <u>Taylor</u> also addressed other types of mail between inmates and prosecuting attorneys, courts, and probation/parole officers, we focus on only attorney mail in this case."). It then concluded that a prison's "pattern and practice" of opening attorney mail outside the inmate's presence impinged upon his right to freedom of speech. *Id.*, at 1334. Nevertheless, as noted previously, "an isolated incident of mail tampering is usually insufficient to establish a constitutional violation . . . . Rather, the inmate must show that prison officials 'regularly and unjustifiably interfered with'" with his legal mail. <u>Davis</u>, 320 F.3d at 351.

Plaintiff challenges the version of Rule 33-210.102(8)(d), which became effective April 23, 2009, and which he says interfered with his incoming mail from this court. The Rule, as amended that date, provides:

> (d) The sender of incoming legal mail shall mark the outside of the envelope "legal-confidential," "legal-open only in the presence of the addressee," or similar language which would put the reader on notice that the mail is legal mail of a confidential nature. <u>Mail from courts that is subject to public inspection under Chapter 119. F.S., [Public Records] need not be marked as legal mail. Incoming mail which does not include a marking on the outside of the envelope requesting that it be treated as confidential legal mail shall be treated as routine mail and shall be opened and examined, and is subject to being read by a designated employee outside the presence of the inmate</u>.

Rule 33-210.102(8)(d), Fla. Admin. Code (eff. April 23, 2009) (emphasis added).[19]

---

[19] Since its effective date on April 23, 2009, this Rule has been amended several times. It currently provides:

(d) All incoming legal mail will be opened in the presence of the inmate to determine that the correspondence is legal mail and that it contains no unauthorized items. Only the signature and letterhead may be read.

Rule 33-210.102(8)(d), Fla. Admin. Code (eff. Dec. 5, 2012).

Defendants first note that any individual capacity claim against former FDOC Secretary McNeil has not been served. Defendants then proceed to address Plaintiff's allegations against Defendant Gavin (to the extent they implicate any properly exhausted claim). In arguing that Plaintiff's claim against Defendant Gavin should be dismissed, Defendants submit—without any citation to legal authority—that incoming court mail is "not protected because it is subject to public inspection and is not privileged" (doc. 155 at 16). Further, they contend, dismissal of the claim against Defendant Gavin is appropriate because Plaintiff has failed to identify with adequate specificity the sender of the item, the content, or the date of the alleged incident(s) (*id.* at 16–17).

As noted above, under current Eleventh Circuit precedent incoming court mail is considered legal mail. *See* Taylor, 532 F.2d at 475–76. Thus, Defendants' argument to the contrary must be rejected. Additionally, the court disagrees that Plaintiff failed to identify adequately the sender of the item(s) or the content of the item(s). Plaintiff alleges the items were mailed from this court; moreover, given that allegation, the contents of those items may be reasonably presumed. Nevertheless, the court agrees that dismissal of the claim against Defendant Gavin is warranted. Although Plaintiff complains in general terms of "numerous" instances in which Defendant Gavin, along with certain of the unserved Defendants, opened and read his incoming legal mail from this court, he does not identify even one specific occurrence in which *Defendant Gavin* actually did so. Plaintiff's vague allegation against Defendant Gavin is insufficient to state a claim for relief on the ground this particular Defendant "regularly and unjustifiably" opened Plaintiff's legal mail outside of his presence and interfered with his legal mail. Davis, 320 F.3d at 351. Dismissal of Plaintiff's claim against Defendant Gavin should be with prejudice, in light of the numerous opportunities Plaintiff has been afforded to amend this claim.

A claim against Defendant Crews in his individual capacity could be predicated on two theories: personal involvement and supervisory liability. *See* Dean v. Barber, 951 F.2d 1210, 1215 (11th Cir. 1992). Here, neither theory applies, as Defendant Crews was not in office at the time of the events giving rising to this action. Thus, Plaintiff's claims against Defendant Crews are in his official capacity only, as a successor to McNeil.

Defendants completely fail to address any official capacity claim against Defendant Crews concerning Rule 33-210.102(8)(d), Fla. Admin. Code (eff. April 23, 2009). The court is persuaded, however, that Plaintiff has adequately alleged a claim for relief under the First Amendment. Plaintiff asserts that the FDOC Secretary implemented a Rule that permitted incoming legal mail to be opened and read outside the inmate's presence and that his own mail from this court was opened and read outside his presence. A reasonable reading of Rule 33-210.102(8)(d), as it existed in April 2009, is that incoming court mail need not be marked as legal mail and, as such, would be subject to being opened and read by prison officials outside the presence of the inmate. Rule 33-210.102(8)(d), Fla. Admin. Code (eff. April 23, 2009). But, under long-standing Eleventh Circuit precedent, incoming court mail is considered legal mail which prison officials may not open and read outside the inmate's presence. *See* Taylor, 532 F.2d at 475–76. The court concludes that this claim contains sufficient factual matter to state a claim to relief that is plausible on its face. Ashcroft, 556 U.S. at 678. Nevertheless, as discussed below, based on Defendant Crews' entitlement to Eleventh Amendment immunity for damages and the mootness of any federal claim against him for injunctive relief, he should be dismissed from this action. Dismissal should be with prejudice, as any attempt to amend to state a viable § 1983 claim against Defendant Crews would be futile. *See* Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001) (amendment of complaint need not be allowed where amendment would be futile).

Limitation on Recovery and Eleventh Amendment Immunity

Title 42 U.S.C. § 1997e(e) provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The Eleventh Circuit has decided that the phrase "Federal civil actions" means all federal claims, including constitutional claims. Napier v. Preslicka, 314 F.3d 528, 532 (11th Cir. 2000) (citing Harris v. Garner, 216 F.3d 970, 984–85 (11th Cir. 2000) (*en banc*)). Where a prisoner plaintiff alleges constitutional violations—including First Amendment violations—he is prevented under § 1997e(e) from seeking punitive or compensatory damages in the absence of a physical injury. Smith v. Allen, 502 F.3d 1255, 1271 (11th Cir. 2007) *abrogated on other grounds by* Sossamon v. Texas, ____U.S.____, 131 S. Ct. 1651, 179 L. Ed. 2d

700 (U.S. 2011)); *see also* <u>Al-Amin v. Smith</u>, 637 F.3d 1192, 1199 (11th Cir. 2011) (noting that <u>Napier</u> court, by affirming dismissal of Napier's entire claim, "concluded, albeit *sub silentio*, that Napier's punitive claim was barred by § 1997e(e) just as much as his compensatory claim."). Nominal damages, however, may still be recoverable. <u>Smith</u>, 502 F.3d at 1271.

Plaintiff in this case asserts damages for mental and emotional harm for his claims under the First Amendment as to which he does not—and cannot—allege physical injury. Accordingly, the punitive and compensatory damages Plaintiff seeks are unavailable to him. Moreover, although Plaintiff is not precluded under § 1997e(e), from recovering nominal damages or obtaining equitable relief, Plaintiff cannot obtain either type of relief from Defendant Crews.

Eleventh Amendment immunity bars Plaintiff's § 1983 claims for damages against Defendant Crews in his official capacity. Absent waiver or express congressional abrogation, the Eleventh Amendment prohibits a suit brought by a private individual against a state in federal court. *See* <u>Federal Maritime Commission v. South Carolina State Ports Authority</u>, 535 U.S. 743, 765–78, 122 S. Ct. 1864, 152 L. Ed. 2d 962 (2002); <u>Kentucky v. Graham</u>, 473 U.S. 159, 167, n.14, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985); <u>Gamble v. Florida Department of Heath and Rehabilitative Services</u>, 779 F.2d 1509, 1511 (11th Cir. 1986). A suit against a state employee in his or her official capacity is deemed to be a suit against the state for Eleventh Amendment purposes. <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). A plaintiff may not bring a § 1983 action for monetary damages against the state or state officials in their official capacities. <u>Miller v. King</u>, 384 F.3d 1248 (11th Cir. 2004). Thus, Defendant Crews is entitled to Eleventh Amendment immunity from damages. To the extent Plaintiff seeks equitable relief from Defendant Crews, however, Defendant is not immune, as state officials in their official capacities are not immune from claims for such relief. *See* <u>Powell v. Barrett</u>, 496 F.3d 1288, 1308 & n.27 (11th Cir. 2007).

Although Defendant Crews is not immune from Plaintiff's claims for equitable relief, the claims are moot. As noted, Rule 33-210.102(8)(d), Fla. Admin. Code, now provides that incoming legal mail must be opened in the presence of the inmate and that only the signature and letterhead of the correspondence may be read by prison officials. Plaintiff's demand for equitable relief on his claim that an earlier version of this Rule permitted his mail to be opened and read outside his presence

therefore is moot and cannot proceed.  *See* Adler v. Duval County Sch. Bd., 112 F.3d 1475, 1477
(11th Cir. 1997) (stating that "[w]hen the threat of future harm dissipates, the plaintiff's claims for
equitable relief become moot because the plaintiff no longer needs protection from future injury");
Prison Legal News v. McDonough, 200 F. App'x 873, 878 (11th Cir. 2006) (finding argument that
injunction was required to prevent further censorship was moot due to FDOC's revision of reading
material impoundment rule at issue).

    State Law Claims

    Plaintiff was given leave to file a sixth amended complaint limited to his free speech claims,
along with related state law claims.  Some of Plaintiff's numerous state law claims, which are based
on the Florida Constitution, Florida statutory law, and the Florida Administrative Code, are unrelated
to his free speech claims.  Nevertheless, the court addresses them briefly.

    As an initial matter, the court notes that § 1997e(e) should apply to Plaintiff's state law claims.
The Eleventh Circuit has not specifically addressed the issue of whether punitive and compensatory
damages sought by a prisoner plaintiff that are predicated upon state law claims brought in federal
court are likewise precluded under § 1997e(e) absent an actual physical injury.[20]  In Mitchell v.
Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1312 (11th Cir. 2002), the court held that "§
1997e(e) does not apply to prisoner lawsuits unrelated to prison conditions filed in state court based
solely on state law and removed by defendants to federal court based on diversity jurisdiction."
Mitchell, 294 F.3d at 1312.  Nevertheless, "[a]fter Mitchell, a defendant sued in state court on state
law claims related to prison conditions who removes to federal court is not automatically precluded
from moving to dismiss [under § 1997e(e)]."  Napier v. Preslicka, 331 F.3d 1189, 1195 (11th Cir.

---

[20] Numerous district courts have, however, concluded that such damages are barred. *See, e.g.,* Jacobs v. Penn.
Dept. of Corrections, Case No. 04–1366, 2011 WL 2295095, at *23 (W.D. Pa. June 7, 2011) (holding that prisoner's
damages for mental harm based on state law claims are barred absent an actual physical injury); Schonarth v. Robinson,
Civ. No. 06–cv–151, 2008 WL 510193, at *4 (D.N.H. Feb. 22, 2008) (finding that the PLRA bars recovery for mental
or emotional injury under a state law claim); Hood v. Balido, No. 3:02–CV–0669, 2002 WL 1285200, at *3 (N.D. Tex.
June 4, 2002) (finding that § 1997e(e)'s limitation with respect to physical injury applies to all "claims brought in
federal court, not merely to claims founded on federal law.  It may thus preclude pendent state claims for emotional
damages."). *But see* Albrecht v. Williams, Civ. A. No. 04–1895, 2009 WL 3296649, at *27 (D.N.J. Oct. 13, 2009)
(doubting that § 1997e(e) applies to state law claims); Mercado v. McCarthy, Civ. A. No. 05–12124, 2009 WL
799465, at *2 (D. Mass. Mar. 25, 2009) (same); Bromell v. Idaho Dept. of Corrections, No. CIV–07–197, 2006 WL
3197157, at *5 (D. Idaho Oct. 31, 2006) (concluding § 1997e(e) does not bar a state-law claim for emotional injury).

2003) (Barkett, J., dissenting from denial of rehearing *en banc*) (citation and internal quotation marks omitted).  It follows, under this reasoning, that a defendant who is sued initially in federal court on state law claims related to prison conditions should likewise not be precluded from relying on § 1997e(e).  Thus, in the instant case, § 1997e(e) should apply to Plaintiff's state law claims and bar recovery for punitive and compensatory damages for emotional or mental harm in Defendants' individual capacities.  *See also* Jacobs, 2011 WL 2295095, at *23 (noting that because the plaintiff had elected to file a federal civil action which included both federal and state law claims, "[h]e must abide by that choice, which under [§ 1997e(e)] precludes recovery for mental or emotional injury.").

### Florida Constitution

The First Amendment states that "Congress shall make no law . . . abridging the freedom of speech, or of the press."  U.S. Const. amend. I.  Art. I, § 4 of the Florida Constitution also provides free speech guarantees:  "Every person may speak, write and publish sentiments on all subjects but shall be responsible for the abuse of that right.  No law shall be passed to restrain or abridge the liberty of speech or of the press. . . ."  Fla. Const., Art. I, § 4.  "The scope of the protection accorded to freedom of expression in Florida under article I, section 4 is the same as is required under the First Amendment."  Dept. of Educ. v. Lewis, 416 So. 2d 455, 461 (Fla. 1982); *see also* Florida v. Global Comms. Corp., 622 So. 2d 1066, 1075 (Fla. 4th DCA 1993); American Atheists, Inc. v. City of Starke, No. 3:05–cv–977–J–MMH, 2007 WL 842673, at *7 (M.D. Fla. Mar. 20, 2007) ("Florida courts adopt the federal interpretation of the First Amendment to the extent that it tracks the Florida Constitution.").  Accordingly, for the same reasons that Plaintiff's free speech claims against Defendants Crews, Gavin, and Haas under the First Amendment fail, his claims under Article I, § 4 of the Florida Constitution likewise fail.[21]

### Negligence

---

[21] Plaintiff also vaguely claims a "conflict of interest," in violation of Article III of the Florida Constitution.  Section 18 of Article III provides:  "A code of ethics for all state employees and nonjudicial officers prohibiting conflict between public duty and private interests shall be prescribed by law."  Fla. Const., Art. III, § 18.  Assuming § 18 is the provision on which Plaintiff seeks to rely, the court finds no basis for Plaintiff to state a claim for relief.

In Florida, officers, employees, and agents of the state and any of its subdivisions are immune from suit in their individual capacities unless they "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). Plaintiff's allegation that all Defendants "acted in bad faith with malicious purpose, [and] exhibited wanton & willful disregard for [Plaintiff's] rights & property" (doc. 120, Statement of Claims, ¶ 3), is conclusory and therefore insufficient to survive a motion to dismiss. *See* Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, negligence does not rise to the level of bad faith, malicious purpose, or wanton and willful disregard of human rights, safety, or property, that is necessary to sue a state employee individually. *See* Ondrey v. Patterson, 884 So. 2d 50, 54 (Fla. 2d DCA 2004) (stating that an employee's conduct must be something greater than gross negligence in order to be actionable under § 768.28(9)(a)). Defendants' alleged conduct was performed within the scope of each individual's employment. Plaintiff's individual capacity claims for negligence against Defendants therefore should be dismissed. Plaintiff's official capacity claims against Defendants (other than Defendant Crews) are likewise barred by § 768.28(9)(a), which additionally provides that "the exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers shall be by action against the governmental entity, or the head of such entity in her or his official capacity . . . ." Fla. Stat. § 768.28(9)(a). The state law negligence claims against Defendants, in both their official capacities (other than Defendant Crews) and individual capacities, therefore should be dismissed. Dismissal should be with prejudice.

For Plaintiff to pursue an official capacity claim against Defendant Crews, the sixth amended complaint must allege compliance with § 768.28(6)(a). *See* Menendez v. N. Broward Hosp. Dist., 537 So. 2d 89, 91 (Fla. 1988). As Plaintiff's complaint fails to include such an allegation, it is subject to dismissal for failure to state a claim. Menendez, 537 So. 2d at 91; *see also* Washington v. School Bd. of Hillsborough County, 731 F. Supp. 2d 1309, 1321 (M.D. Fla. 2010) (granting summary judgment in part because plaintiff failed to allege he provided notice of his claim for tortious interference to the Department of Financial Service, and defendants offered affidavit showing Plaintiff

did not provide pre-suit notice). In the instant case, Plaintiff has not alleged compliance with § 768.28(6)(a). Additionally, the Declaration of Pamela Clark which Defendants have submitted, reflects that the Department of Financial Services did not receive written notice of Plaintiff's claims (doc. 155-2). Plaintiff's claim of negligence against Defendant Crews in his official capacity is therefore premature under § 768.28(6)(a) and should be dismissed without prejudice.

### Fraud

Defendants submit that Plaintiff's allegations of fraud against Defendant Haas fail to state a claim for relief because he has not pled the elements of a prima facie case. To state a prima facie claim of fraud a plaintiff must allege the following elements: (1) a false statement concerning a material fact; (2) knowledge by the person making the statement that the representation is false; (3) the intent by the person making the statement that the representation will induce another to act on it; and (4) reliance on the representation to the injury of the other party. Johnson v. Davis, 480 So. 2d 625, 627 (Fla. 1985). Plaintiff alleges that Defendant Haas falsely accused him of possessing the Redemption Manual, an accusation that led to the search of his cell and the impoundment of his TAB newspaper (doc. 120, Statement of Facts, ¶¶ 8–10). As Plaintiff's allegations do not implicate fraudulent conduct, it is not surprising that they do not state a prima facie claim of fraud. Regardless of whether Plaintiff's allegations may satisfy the first two elements, Plaintiff does not allege that Defendant Haas intended that her accusation would result in a cell search, as required under the third element. Nor does Plaintiff's allegation that he was deprived of his TAB newspaper, thereby suffering an "injury," satisfy the fourth element. Plaintiff acknowledges that the FDOC LRC banned all TAB materials (id., ¶ 13). Plaintiff's loss of an item the FDOC LRC determined he was not otherwise entitled to possess does not constitute an injury that resulted from any statement made by Defendant Haas. Plaintiff's claim of fraud against Defendant Haas should therefore be dismissed.

### Other Claims for Relief

In the "Statement of Claims" section of the sixth amended complaint Plaintiff relies on other provisions of Florida law and certain administrative rules not previously discussed, namely Fla. Stat. §§ 20.315, 943.13(7), and 944.09, and Rules 33-208.002(3)(a)(6)(12)(19) and 33-103.

With respect to the Florida statutes Plaintiff cites, § 20.315 authorizes the creation of the FDOC; § 943.13(7) provides that correctional and other officers employed by the State of Florida

shall have a good moral character, as determined by a background check; and § 944.09 grants the FDOC the authority to adopt rules. Plaintiff's factual allegations in the "Statement of Facts" section of the sixth amended complaint provide no support for his claims for relief based on a violation of these statutes. Furthermore, none of these statutes expressly creates a private cause of action for their violation, and no private cause of action should be implied. The Florida Supreme Court has held that "legislative intent . . . should be the primary factor considered by a court in determining whether a cause of action exists when a statute does not expressly provide for one." Murthy v. Sinha Corp., 644 So. 2d 983, 985 (Fla. 1994); *see also* QBE Ins. Corp. v. Chalfonte Condominium Apartment Ass'n, Inc., 94 So. 3d 541, 551 (Fla. 2012) ("Since Murthy, we have reaffirmed the principle that whether a statutory cause of action should be judicially implied is a question of legislative intent."). "The primary guide in determining whether the Legislature intended to create a private cause of action is the 'actual language used in the statute.'" QBE Ins. Corp., 94 So. 3d at 551, citing Borden v. East-European Ins. Co., 921 So. 2d 587, 595 (Fla. 2006). There is nothing in the legislative intent of Chapters 20, 943, or 944, Florida Statutes, which suggests the Legislature intended to create a private cause of action for these statutes. *See* §§ 20.315, 943.085, 944.012. As to Defendants Gavin, Haas, and Crews, Plaintiff's factual allegations also do not offer any factual support for a claim for relief of the violation of Rules 33-208.002(3)(a)(6)(12)(19) [FDOC employee rules of conduct] or 33-103[inmate grievance rules]. Plaintiff's claims against these Defendants for the statutory and administrative rule violations noted therefore should be dismissed, with prejudice.

IV.  THE UNSERVED DEFENDANTS[22]

Pursuant to the screening requirements of 28 U.S.C. § 1915A, which requirements apply to all prisoner plaintiffs, the court shall dismiss the complaint, if, *inter alia*, it fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915A(b). Because the language of 1915A(b) tracks the language of Rule 12(b)(6), dismissals are governed by the same standard as that Rule. *See* Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997). Vanderberg v. Donaldson, 259 F.3d 1321, 1323 (11th Cir. 2001).

---

[22] Again, the unserved Defendants are Carnahan, the members of the FDOC LRC, Ellis, Davis, Cobbs, Carmichael, Blocker, LHB (whom Plaintiff also never identified), and former FDOC Secretary McNeil in his individual capacity.

Claims based on certain factual allegations which Plaintiff makes against Defendants Haas and Gavin also have been asserted against some of the other Defendants. Specifically, Plaintiff alleges that in addition to Defendant Haas, Defendants Ellis and Carnahan also falsely asserted that he possessed the Redemption Manual. Plaintiff also alleges that in addition to Defendant Gavin, Defendants Blocker, Carnahan, and LHB opened and read his legal mail. For the reasons that the court has recommended that these allegations against Haas and Gavin fail, it concludes that the same allegations against Ellis, Carnahan, Blocker, and LHB also fail, whether brought under federal or state law.[23]

Plaintiff's additional allegations against Defendant Carnahan also fail to state a claim for relief and therefore should be dismissed. These allegations include that Defendant Carnahan impounded and refused to deliver texts that had been mailed to Plaintiff by TAB, denied Plaintiff's grievances concerning the impounded books, and responded to Plaintiff's grievances concerning "mishandled" court mail. For the same reasons the court determined that Plaintiff failed to state a claim for relief against Defendant Haas for impounding his TAB newspaper, the court concludes that Plaintiff has failed to state a claim against Defendant Carnahan for impounding and refusing to deliver his TAB texts. Plaintiff's allegation does not suggest that Defendant Carnahan "regularly and unjustifiably" interfered with his TAB publications but rather that conduct occurred once, on September 30, 2008. Davis, 320 F.3d at 351. Next, while retaliation against an inmate for filing administrative grievances and lawsuits may give rise to a claim of unlawful retaliation under the First Amendment, Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986); Bridges v. Russell, 757 F.2d 1155, 1156–57 (11th Cir. 1985), in this case Plaintiff does not allege retaliatory conduct by Defendant Carnahan. Nor do Plaintiff's allegations against Defendant Carnahan implicate any other free speech right under the First

---

[23] As with Defendant Haas, Plaintiff has failed to state a prima case of fraud against Defendant Carnahan. See Johnson, 480 So. 2d at 627. Plaintiff has failed to identify a false statement concerning a material fact made by Defendant Carnahan. Furthermore, Plaintiff has not alleged that Defendant Carnahan knew that any such statement was false or that Defendant Carnahan intended that any such statement would induce another to act on it. Finally, that Plaintiff was deprived of texts that the FDOC LRC later banned does not constitute an injury that resulted from any statement made by Defendant Carnahan.

Amendment, such as hindering or thwarting his ability to use the grievance system. Plaintiff's federal and state law claims against Defendant Carnahan should be dismissed, with prejudice.

Plaintiff also alleges that Defendants Davis, Cobbs, and Carmichael discovered and confiscated Plaintiff's TAB newspaper on October 3, 2008. This allegation also fails to state a claim for relief. First, the district court previously rejected any claim by Plaintiff that he was negligently or intentionally deprived of his property, because adequate remedies exist under state law for Plaintiff to seek redress for the deprivation. Hudson v. Palmer, 468 U.S. 517, 533, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984). The FDOC provides an inmate grievance procedure for contesting mishandled inmate property, and Section 768.28, Fla. Stat., provides a tort remedy for the deprivation of property. Furthermore, Plaintiff's allegation against these Defendants implicates an isolated incident rather than conduct that occurred "regularly and unjustifiably interfered" with Plaintiff's mail. Davis, 320 F.3d at 351. Plaintiff's claims, under both state and federal law, against Defendants Davis, Cobbs, and Carmichael should be dismissed, with prejudice.

As noted previously, eight of the eleven named Defendants in this action have not been served with process (that number rises to nine when taking into account that former FDOC Secretary McNeil was not served in his individual capacity). Furthermore, the FDOC LRC is named as one entity; Plaintiff has not identified or served the three individual members of the LRC (see Rule 33-501.401(14), Fla. Admin. Code, identifying the positions of the three persons which compose the LRC). Although Plaintiff is responsible for service, he never informed the court that he had arranged for service upon the unserved Defendants nor requested that summonses be issued for them. Plaintiff also did not request the assistance of the USMS to effect service. Further, other than inquiring about the cost of service by the USMS (see docs. 157, 159), Plaintiff has not attempted to bring the matter to the court's attention or to enlist its assistance regarding effecting service upon the unserved Defendants. Despite having had ample time and the court's offer of assistance if Plaintiff met certain criteria, Plaintiff has failed to effect service upon nine Defendants in this action. As discussed above, however, the court has concluded that dismissal of Defendants Carnahan, Ellis, Davis, Cobbs, Carmichael, Blocker, and LHB is warranted. The court has not considered Plaintiff's allegations against the unserved Defendants, McNeil (in his individual capacity) and the FDOC LRC, which is

composed of three individuals whom Plaintiff has failed to identify. Before recommending dismissal of these Defendants for Plaintiff's failure to effect service, however, the court shall give Plaintiff the opportunity to show good cause, if any there be, why he failed to timely effect service. *See* Fed. R. Civ. P. 4(m).

V.      CONCLUSION

For the reasons set forth above, the court concludes that Defendants' motion to dismiss should be granted, to the extent that Plaintiff's claims against Defendants Haas, Gavin, Carnahan, Ellis, Davis, Cobbs, Carmichael, Blocker, and LHB should be dismissed with prejudice. In addition, Plaintiff's claims under federal and state law against Defendant Crews should be dismissed with prejudice, with the exception that Plaintiff's state law claim for negligence against Defendant Crews should be dismissed without prejudice.

Accordingly, it is **ORDERED** that:

1.      Plaintiff's "Motion for Leave to Amend If Necessary & Supplement to Reply" (doc. 166) is **DENIED**.

2.      Plaintiff shall have through **DECEMBER 2, 2013**, in which to show good cause why he failed to timely effect service on Defendants McNeil (in his individual capacity) and the FDOC LRC. Plaintiff's failure to show good cause shall result in an immediate recommendation to the district court that these Defendants be dismissed from this action.


And it is respectfully **RECOMMENDED** that:

1.      Defendants' motion to dismiss (doc. 155) be **GRANTED,** as follows:

a.      As to Defendants Haas, Gavin, Carnahan, Ellis, Davis, Cobbs, Carmichael, Blocker, and LHB, Plaintiff's claims under both federal and state law should be dismissed, with prejudice;

b.      As to Defendant Crews, Plaintiff's claims under federal law should be dismissed, with prejudice. Plaintiff's state law claim for negligence against Defendant Crews in his official capacity should be dismissed without prejudice, but all other state law claims against Defendant Crews should be dismissed with prejudice.

2.      This matter be remanded to the undersigned for further proceedings.

At Pensacola, Florida, this <u>18th</u> day of November 2013.


                              /s/ *Elizabeth M. Timothy*
                              **ELIZABETH M. TIMOTHY**
                              **UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only</u>.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**