IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

NYKA O'CONNOR,
       Plaintiff,

vs.                       Case No.: 3:09cv224/WS/EMT

M.L. CARNAHAN, et al.,
        Defendants.

_____/

## REPORT AND RECOMMENDATION

      Plaintiff Nyka O'Connor, an inmate of the Florida Department of Corrections, proceeds pro se in this action brought under 42 U.S.C. § 1983, Florida Statutes, Section 768.28, and other state laws.  Presently before the court is a Motion for Summary Judgment (ECF No. 372) filed by the lone remaining Defendant in this action, Walter McNeil, the former Secretary of the Florida Department of Corrections ("DOC").  Plaintiff filed a response to the motion (ECF No. 382).

      The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)(C); Fed. R. Civ. P. 72(b).  After careful consideration of the issues raised by the parties, it is the opinion of the undersigned that Defendant's motion for summary judgment should be granted.

## I.     BACKGROUND

The factual backdrop of this case has been set out more fully in previous Reports and Recommendations.  As it pertains to Defendant McNeil, the operative pleading is the Sixth Amended Complaint (ECF No. 120).  By previous orders of the court, all the other Defendants in this case have been dismissed.  Correspondingly, all of Plaintiff's claims have been dismissed except those against Defendant McNeil.  Plaintiff alleges that Defendant implemented a new rule regarding incoming mail at all prisons in the DOC, allowing an inmate's legal mail to be treated as routine mail and opened outside his presence if the envelope did not specifically identify the mail as being of a legal and confidential nature (*id.* at 15–16).  Plaintiff is currently incarcerated at Union Correctional Institution but was housed at Santa Rosa Correctional Institution during the events which gave rise to this action.

Plaintiff claims this rule is a violation of his First Amendment rights and that its implementation also constitutes negligence on the part of Defendant, as well as violations of Article 1, Section 4 of the Florida Constitution and Florida Statutes, Sections 20.315, 943.13(7), and 944.09, and Rule 33-208.002(3)(a) of the Florida Administrative Code.  Plaintiff seeks punitive, compensatory, emotional, and nominal damages, as well as declaratory and injunctive relief (ECF No. 120 at 11, 15–17).

Defendant seeks summary judgment, based partly on the contention that Plaintiff did not exhaust his available administrative remedies pursuant to 42 U.S.C. § 1997e and that he did not comply with the pretrial notice provisions of Florida Statutes, Section 768.28.  Defendant additionally contends that he is entitled to legislative and qualified immunity, that Plaintiff's claim for compensatory and punitive damages is unavailable, and that Plaintiff failed to state a claim for relief as to his claim of negligence.

II.    SUMMARY JUDGMENT STANDARD

In order to prevail on a motion for summary judgment, the moving party must show that the nonmoving party has no evidence to support his or her case or present affirmative evidence that the nonmoving party will be unable to prove his or her case at trial.  *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  If the moving party successfully negates an essential element of the nonmoving party's case, the burden shifts to the nonmoving party to come forward with evidentiary material demonstrating a genuine issue of fact for trial.  *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 247–48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*, 477 U.S. at 248. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* The nonmoving party must show more than the existence of a "metaphysical doubt" regarding the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Speculation or conjecture from a party cannot create a genuine issue of material fact. *See* Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005). "A mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." Young v. City of Palm Bay, Fla., 358 F.3d 859, 860 (11th Cir. 2004); *see also* Celotex Corp., 477 U.S. at 324. The nonmoving party must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *See* Celotex Corp., 477 U.S. at 324; Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997) (Rule 56 requires the nonmoving party to go beyond the pleadings and by his or her own affidavits, or by the depositions, documents, affidavits or declarations, admissions, interrogatory

answers or other materials on file designate specific facts showing that there is a genuine issue for trial); Hammer v. Slater, 20 F.3d 1137 (11th Cir. 1994).

Evidence presented by the nonmoving party in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to him or her.  *See* Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); Jones v. Cannon, 174 F.3d 1271, 1282 (11th Cir. 1999).  Nonetheless, the nonmoving party still bears the burden of coming forward with sufficient evidence of every element that he or she must prove.  *See* Celotex Corp., 477 U.S. at 317.  A motion for summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Celotex Corp., 477 U.S. at 322.

## III.   DISCUSSION

Title 42 U.S.C. § 1997e provides, in relevant part:  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion of all available administrative remedies is a mandatory pre-condition to

suit.  *See* Booth v. Churner, 532 U.S. 731, 739, 121 S. Ct. 1819, 149 L. Ed. 2d 958

(2001); *see also* Porter v. Nussle,  534 U.S. 516, 524–25, 122 S. Ct. 983, 988, 152

L. Ed. 2d 12 (2002) ("Beyond doubt, Congress enacted § 1997e(a) to reduce the

quantity and improve the quality of prisoner suits; to this purpose, Congress afforded

corrections officials time and opportunity to address complaints internally before

allowing the initiation of a federal case."); Parzyck v. Prison Health Serv., Inc., 627

F.3d 1215, 1217 (11th Cir. 2010).  The exhaustion requirement applies to all inmate

suits about prison life, whether they involve general circumstances or particular

episodes, and whether they allege excessive force or some other wrong.  *See* Porter,

534 U.S. at 524.  Exhaustion is required whether the plaintiff seeks declaratory and

injunctive relief, monetary damages, or both.  *See* Booth, 532 U.S. at 734.  The

requirement is not subject to waiver by a court, or futility or inadequacy exceptions.

*Id.* at 741 n.6; McCarthy v. Madigan, 503 U.S. 140, 112 S. Ct. 1081, 117 L. Ed. 2d

291 (1992) ("Where Congress specifically mandates, exhaustion is required.");

Alexander v. Hawk, 159 F.3d 1321 (11th Cir. 1998).

Importantly, a prisoner plaintiff must fully exhaust his administrative remedies

*before* commencing his lawsuit in federal court.  Smith v. Terry, 491 F. App'x 81, 83

(11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000)).

Therefore, claims that were not exhausted at the time the prisoner filed his lawsuit must be dismissed even if the plaintiff proceeds to exhaust his administrative remedies at some future date.  Smith, 491 F. App'x at 84; *see also* Alexander, 159 F. 3d at 1324–26 (holding that there is no discretion to waive the exhaustion requirement or provide continuances in the event a claim was not exhausted prior to filing suit); Garland v. Corizon Health Services, Inc., No. 4:14cv3/RH/CAS 2014 WL 6804766, at *3 (N.D. Fla. Dec. 1, 2014).

The exhaustion requirement under section 1997e requires proper exhaustion through the administrative grievance procedure created by the appropriate agency—here, the DOC—including compliance with the agency's deadlines and other critical procedural rules.  *See* Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005) (holding that § 1997e(a)'s exhaustion requirement contains "a procedural default component"—that is, prisoners must timely meet the deadlines or the good cause standard of administrative grievance procedures before filing a federal claim, and stating that without "the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one, thereby foreclosing administrative remedies and gaining access to a federal forum without exhausting administrative remedies");

Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000) (holding that "when a state provides a grievance procedure for its prisoners, . . . an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit"); Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999) (per curiam) (holding that a prisoner did not exhaust available administrative remedies where he filed an untimely grievance without seeking leave, and failed to appeal the denial of his grievance); *accord* Woodford, 548 U.S. at 94 ("Requiring proper exhaustion . . . gives prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors.  This is particularly important in relation to state corrections systems because it is "difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons."); Woodford, 548 U.S. at 90–91 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings).

The grievance procedures promulgated by the Florida DOC require an inmate to:  (1) file an informal grievance with a designated prison staff member, (2) file a

formal grievance with the warden's office, and then (3) submit an appeal to the Office of the Secretary ("Central Office").   *See* Fla. Admin. Code  rr. 33-103.005 to 33-103.007; *see also* <u>Parzyck</u>, 627 F.3d at 1218.  If an inmate is filing an emergency grievance, a grievance of retaliation (known as a "grievance of reprisal"), or a grievance of a sensitive nature, he may bypass use of informal and formal grievances and begin his complaint with a direct grievance to the Central Office.  *Id.* at r. 33-103.007(6)(a)(b).  If an inmate files a direct grievance with the Central Office, he must clearly state the reason for not initially bringing the complaint to the attention of institutional staff and bypassing the formal grievance step of the institution.  *Id.*  Upon receipt of the direct grievance by the Central Office and following review of the grievance, if it is determined that the grievance is not an emergency grievance, grievance of reprisal, or grievance of a sensitive nature, the grievance must be returned to the inmate with the reasons for return specified and an advisement that the inmate resubmit his grievance at the appropriate level.  *Id.*

In <u>Bryant v. Rich</u>, 530 F.3d 1368 (11th Cir. 2008), the Eleventh Circuit outlined the procedure district courts should follow when presented with a motion to dismiss for failure to exhaust.  The court held that the defense of failure to exhaust should be treated as a matter in abatement and not an adjudication on the merits.  *Id*. at 1374–75.

"This means that procedurally the defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." <u>Turner v. Burnside</u>, 541 F.3d 1077, 1082 (11th Cir. 2008) (quoting <u>Bryant</u>, 530 F.3d at 1374).  Because exhaustion is a matter in abatement, "it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment."  <u>Bryant</u>, 530 F.3d at 1374–75 (citation and internal quotation omitted).  Where exhaustion is treated as a matter in abatement and not an adjudication on the merits, it is proper for the district court to consider facts outside of the pleadings and resolve factual disputes so long as the factual disputes do not decide the merits, and the parties have sufficient opportunity to develop a record.  *Id.* at 1376.

Plaintiff's claims against Defendant McNeil wholly concern his implementation of a new provision into the Florida Administrative Code as it concerns the mail intake procedures within the Florida Department of Corrections.  Specifically, on April 23, 2009, Rule 33-210.102 (the "Rule") was amended to add subsection (8)(d), which read:

> (d) The sender of incoming legal mail shall mark the outside of the envelope "legal–confidential," "legal–open only in the presence of the addressee," or similar language which would put the reader on notice that the mail is legal mail of a confidential nature.  Mail from courts that is subject to public inspection under Chapter 119, F.S., need not be marked as legal mail.  Incoming mail which does not include a marking

on the outside of the envelope requesting that it be treated as confidential legal mail shall be treated as routine mail and shall be opened and examined, and is subject to being read by a designated employee outside the presence of the inmate.

Plaintiff's central claim asserts that the implementation of this provision, which was subsequently repealed, constituted a violation of his First Amendment right to free speech.

In arguing the exhaustion issue, Defendant points to the particularized rule-making procedure set out in Florida Statutes, Section 120.54, whereby "[a]ny person regulated by an agency or having substantial interest in an agency rule may petition an agency to adopt, amend, or repeal a rule or to provide the minimum public information required by this chapter."  Fla. Stat. § 120.54(7).  Upon receipt of such petition, the DOC is required to hold a hearing or otherwise consider the petition within thirty days.  *See* Fla. Stat. § 120.54(7)(b)–(d).  In observance of this process, the DOC put forth a "Notice of Development of Rulemaking" on January 23, 2009, and a "Notice of Proposed Rule" on February 20, 2009 (ECF Nos. 372-2, 372-3).  The Rule was certified on April 3, 2009, and the amendments to the Rule were adopted on April 23, 2009 (ECF Nos. 372-4, 372-5).

Because Plaintiff essentially challenges the implementation of the Rule on First Amendment grounds, this petitioning procedure would seem the appropriate—or at

least the most appropriate—route for Plaintiff to have used to exhaust his available administrative procedures.[1]  Plaintiff has spoken to the fact that he has used this rule-petitioning procedure in other instances, but he could not recall whether he had filed a petition relative to the rule in question (ECF No. 372-7 at 3–4, Deposition of Plaintiff at 27–28).  Defendant provides an affidavit from a DOC administrator stating that, according to their records, Plaintiff filed no petitions related to Rule 33-210.102 (ECF No. 372-6).

As Defendant acknowledges, Plaintiff did exhaust an issue relevant to the issue of prison staff reading inmate legal mail.  Plaintiff filed grievances regarding an incident in which he alleged that a particular correctional officer was surreptitiously opening his legal mail outside his presence, then pretending to open it for the first time while in his presence (ECF No. 372-8 at 5).  Plaintiff filed informal, formal, and appeal grievances on March 30, April 12, and May 10, 2009 (ECF No. 372-8 at 1–5).  The grievance process was concluded with the denial of his grievance appeal on May 20, 2009 (*id.* at 1).  Plaintiff did not challenge, or even mention, the Rule throughout

---

[1]  Defendant stops short of asserting that Plaintiff must have used the Section 120.54 procedure to achieve exhaustion of his claim, and without so deciding, this court surmises that such an assertion would be unsound, if for no other reason that it would preclude an inmate who entered the DOC after passage of the Rule from challenging the Rule's usage against him.  Accordingly, the court views the Section 120.54 procedure as simply one avenue Plaintiff might have taken, another avenue being the regular inmate grievance procedure described above.

this grievance process, and in fact that much of the grievance process took place—not to mention the underlying incident(s)—before the Rule was adopted on April 29, 2009.

In another grievance process initiated by Plaintiff, however, the matter of the Rule was raised during the process.  Plaintiff filed an informal grievance on May 12, 2009, stating that he had received legal mail—from this court pertaining to another case—that had already been opened outside his presence (ECF No. 372-11 at 5). Plaintiff, though, did not mention the Rule.  On the next day the grievance was denied, citing the Rule.  On May 17, 2009, Plaintiff filed a formal grievance, asserting that the Rule does not apply to legal mail from a court (*id.* at 3).  That grievance was denied on the basis of the Rule on May 27, 2009 (*id*. at 4).  On May 31, 2009, Plaintiff filed an administrative appeal to the Defendant's office, reasserting the same argument and also claiming a violation of his First Amendment rights (*id.* at 2).  The grievance appeal was denied on June 15, 2009 (*id.* at 1).  By that time, Plaintiff had already filed his complaint, delivering it into the prison mail system on May 26, 2009; the complaint was received and filed by the Clerk of this court on May 28, 2009 (ECF No. 1).

The grievance history above shows that Plaintiff did not properly exhaust his administrative remedies prior to filing this lawsuit.  As noted above, there is no evidence that he used the Section 120.54 petition procedure to challenge the Rule.  Additionally, although Plaintiff did exhaust the grievance process concerning an incident where a particular correctional officer surreptitiously opened his legal mail, these grievances in no way addressed the Rule, which had not even been enacted at the time the grievance was raised.  Since Plaintiff's claim in this action is solely concerned with Defendant's implementation of the Rule, and not with the actions of any correctional employees, it cannot be concluded that this use of the grievance system constituted exhaustion of his claim against the lone Defendant.  Subsequently, Plaintiff did initiate a grievance that pertained to the Rule (although not identifying it initially as such), but it is clear that he filed the instant lawsuit before completing this grievance process, which under Eleventh Circuit law is not proper exhaustion.

In response, Plaintiff does not particularly address the grievances identified above, their dates, or their results.  Rather, he asserts that there were other grievances, particularly grievances of a sensitive nature, that he filed in and around the time of the grievances mentioned above.  As per DOC grievance procedure, these grievances were mailed directly to the DOC, thus bypassing any grievances at the institutional

level.  Plaintiff explains that he did this because he was afraid of threats of retaliation and physical abuse from prison staff for being a "writ writer that files a lot of grievances" (ECF No. 382-1 at 54, Affidavit of Plaintiff dated September 18, 2015). Plaintiff states that he does not specifically recall any particular grievance, and he does not provide any copy of them, but he does state that these direct grievances were filed between April 23 and April 26 of 2009 (*id.* ).  In apparent response to the fact that there is no evidence of these grievances in the record, Plaintiff suggests that the grievances were never recorded or simply discarded and never returned to him (*id.*).

Plaintiff's assertions are belied by the record.  As he provided in his deposition:

> . . . it does start with the mail in this case were opened outside my presence and read.  And I filed with the court notifying the court that this was going on.  And – and – and – and I thought it was actually a retaliation so I filed a dire grievance with the Tallahassee, emergency grievance . . . .
>
> . . .
>
> I actually thought it was a reprisal.  I thought it was a reprisal why they were opening my mail.  Until I knew a rule was actually instilled, which 33 210.12(8)(a) [sic].  That was the rule that authorizes the DOC to open my mail and read outside of my presence.  And it says in the rule that's why it's being done.  And I thought it was retaliation.  So I filed direct grievances to Tallahassee that I'm being retaliated.  Then later on I find out there's a rule on that.
>
> . . .
>
> After the grievance response, is when they said the rule – decided the rule, and said this rule authorize us to do, you know, opening mail.  And like I said, my allegation was that they opened my mail outside my presence and reading it.

> And they didn't refute none of them allegations, which they were doing.  And they said the rule, Chapter 33 210.10298)(d) allowed them to do that.  And that's when I learned from the grievance responses.
>
> . . .
>
> I even asked the officer, because the officer who was bringing the mail, he was bringing it through routine mail, which I remember handing me my regular mail.  So I asked him, "Why you all opening mail outside of my presence when it's legal mail from courts, attorneys and Florida Department of Health and Department of Justice?  Why ya'll opening the mail outside my presence and give it to me?"
>
> You know what I'm saying.  Ya'll reading it, violating me.  And you were like that's how they gave it to him, and said it's routine.  And he done pass it out, he don't know what's going on.  So that's when I started filing, because he didn't even know there was a rule on it.  Or if he did, he didn't tell me about it.  So, you know, I thought it was reprisal.

ECF No. 382-1 at 11, 15, Deposition of Plaintiff at 17, 34–35.

Because the Rule was implemented on  April 23, 2009, that is the earliest date upon which the Plaintiff could have learned about *the fact* that his legal mail was being opened outside his presence, assuming that he learned this from the officer who brought the mail to his cell on the very first day the rule was implemented.  As Plaintiff stated, he did not know about the Rule at that time, and instead thought he was being retaliated against.  Accordingly, the subject of any direct grievance that he might have mailed to the DOC at this time could not have been the opening of his mail because of the Rule, but rather the opening or his mail because of the perceived retaliation.  Correspondingly, the target of this grievance would not have been

Defendant but the officers that Plaintiff thought were responsible for opening his mail at the institution.

Moreover, Plaintiff's "learning" of the Rule is already documented by the grievance process discussed *supra*, spanning from May 12 to June 15, 2009, the exhaustion of which post-dated the complaint.  There, Plaintiff initiated the grievance process by complaining in his informal grievance about the opening of his mail—without reference to the Rule (ECF No. 372-11 at 5).  When the grievance was denied, the Rule was cited, and only from that point forward did Plaintiff begin to cite to the Rule and question its validity or applicability.  Thus, it is apparent that he only learned of the Rule and challenged it during this grievance process, which was not proper exhaustion because it post-dated the filing of the lawsuit.

Furthermore, Plaintiff's assertions that he filed other grievances that were never logged are diminished by the fact that, as evidenced by the grievances described earlier, he seemed to be quite able to file grievances without problems of loss, misplacement, or intentional destruction of his filings.  In fact, in and around this time, Plaintiff filed a multitude of grievances that were properly received and responded to

(*see* ECF No. 372-9 (charting approximately 94 grievances filed from April 2009 to April 2010)).[2]

In explaining that he filed grievances of a sensitive nature directly with the DOC office—one of which, according to Plaintiff, might have been a grievance addressing the Rule—Plaintiff states he was fearful of retaliatory actions from staff at SRCI. Yet, Plaintiff actually did grieve the Rule when he initiated the grievance process described above, which was exhausted after the complaint was filed. Plaintiff accomplished this via the "normal" grievance process, which included the filing of informal and formal grievances at the institutional level. The court must greatly discount Plaintiff's assertion that he was fearful of filing grievances at the institutional level about the opening of his legal mail when he essentially did just that at the same time he was allegedly filing his sensitive grievances.[3]

In sum, the court finds Plaintiff's contention that he filed grievances that went unanswered to be vague, without foundation, and lacking in credibility. The evidence in the record otherwise shows a consistent pattern of grievance filings and responses

---

[2] Plaintiff also appeared to have no problem retaining copies of these grievances (*see* ECF Nos. 7-2, 7-3 (numerous grievances attached to Plaintiff's amended complaint)).

[3] As well, Plaintiff's earlier grievance process, described *supra* regarding the staff member who allegedly was surreptitiously opening Plaintiff's legal mail, was filed at the informal and formal grievance level. For that matter, many of Plaintiff's other grievances were similarly filed at that time (*see* ECF Nos. 7-2, 7-3) .

in compliance with DOC procedure, and it therefore carries an indicia of reliability upon which the court finds that the grievances currently in the record represent the sum total of grievances that Plaintiff filed relevant to the Rule.  Because the grievances on record establish that Plaintiff did not properly exhaust his claim, the claim is due to be denied on this basis.

Furthermore, and especially given the fact that the Rule Plaintiff challenges is no longer in effect, it is evident that any future attempt to exhaust would be rejected as time-barred or procedurally defaulted.  That this dismissal would essentially be with prejudice is of no moment.  *See* Johnson, 418 F.3d at 1159 (failure of inmate to timely grieve defendants' conduct required dismissal of federal suit with prejudice, when inmate did not follow internal grievance procedure initially, and upon inmate's subsequent filing of an out-of-time grievance, prison administrators found no grounds or good cause to authorize untimely grievance); *see also* Bryant, 530 F.3d at 1375 n.11; Mason v. Bridger, 261 F. App'x 225, 229 (11th Cir. 2008) (affirming district court's grant of summary judgment in favor of defendants where inmate failed to properly exhaust all available administrative remedies; inmate not only filed untimely grievances without alleging good cause for doing so, but also failed to appeal the denials of those grievances); Lambert v. United States, 198 F. App'x 835, 839–40

(11th Cir. 2006) (affirming district court's dismissal of constitutional claims as unexhausted and procedurally barred where inmate conceded he failed to file any grievances on his constitutional claims); Simpson v. Holder, 200 F. App'x 836, 840 (11th Cir. 2006) (affirming district court's dismissal of complaint with prejudice as unexhausted and procedurally defaulted where inmate never filed a timely or untimely grievance and would be time-barred from doing so under Florida administrative rules); Isaac v. Donald, 211 F. App'x 859, 862 (11th Cir. 2006) (suit under section 1983 was barred by section 1997e(a) where inmate failed to exhaust administrative remedies in a timely way, and he failed to provide prison officials with reason to excuse his delay); Ory v. McHugh, No. 5:07cv291/MCR/EMT, 2008 WL 2756463, at *6 (N.D. Fla. July 14, 2008) (dismissing case with prejudice where inmate never filed or attempted to file timely or untimely grievance and would be time-barred from doing so under Florida's administrative rules).

Likewise, because Plaintiff's related state law claims also pertain to prison conditions, they are subject to the exhaustion requirement because Florida has adopted the federal exhaustion requirement as it pertains to the inmate grievance procedures under Section 1997e.  See Adlington v. Mosley, 757 So. 2d 573, 574 (Fla. 4th DCA 2000) (citing Fla. Stat. §§ 944.09(1)(e) & 944.331); see also Hollingsworth v. Brown,

788 So. 2d 1078 (Fla. 1st DCA 2001).  "All state prisoners, regardless of whether they are incarcerated in a state owned and operated prison or in a facility that is run by a private corporation under contract with the state, are required to exhaust these procedures before filing any civil complaint relating to the care and custody of inmates."  Adlington, 757 So. 2d at 574.

Moreover, Plaintiff cannot prevail on his state law claim of negligence under Florida Statutes, Section 768.28, due to his failure to comply with that statute's pre-suit procedures.  That section allows for civil actions to be brought against the state or one of its agencies to recover damages for injuries in tort.  *See* Fla. Stat. § 768.28(1).  However, such an action "may not be instituted against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency and also . . . presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues . . . ." Fla. Stat. § 768.28(6)(a).  These notices are mandatory conditions precedent to filing suit, and failure to comply is ground for dismissal for failure to state a claim upon which relief can be granted.  Menendez v. N. Broward Hosp. Dist., 537 So. 2d 89, 91 (Fla. 1988); *see also* Washington v. School Bd. of Hillsborough County, 731 F. Supp. 2d 1309,

1321 (M.D. Fla. 2010).  Accordingly, a complaint that fails to allege compliance with

the notice provisions should be dismissed.  Menendez, 537 So. 2d at 91.

Because Plaintiff does not allege compliance with the notice provision, nor does

he assert he has done so in his response to Defendant's motion for summary judgment,

it is clear that he has failed to comply.  Instead, Plaintiff argues that the notice

provision does not apply to his case, but this argument is unavailing.  The cases

Plaintiff cites stand for the proposition that, under a previous version of the statute,

claims sounding in contract are not subject to the pre-suit notice provisions.  *See*

Doyle v. City of Coral Gables, 33 So.2d 41, 42, (Fla. 1948) ("We therefore hold that

appellant had her election to sue in tort or on contract, that when she elected to sue on

contract the requirement of notice to the city before bringing the action, if otherwise

enforceable, became immaterial."); Holbrook v. City of Sarasota, 58 So. 2d 862,

864–65 (Fla. 1952) (same).  Plaintiff, however, claims constitutional injury, here

based on violations of his First Amendment rights, which sound in tort.  *See* Heck v.

Humphrey, 512 U.S. 477, 483, 114 S. Ct. 2364, 2370 (1994); Memphis Community

School Dist. v. Stachura, 477 U.S. 299, 305, 106 S. Ct. 2537, 2542 (1986); Carey v.

Piphus, 435 U.S. 247, 253, 98 S. Ct. 1042, 1047 (1978).  Additionally, Plaintiff

appropriately terms his claim under Section 768.28 as one of "negligence," which is

a species of tort.  *See, e.g.,* Gamble v. Florida Dept. of Health and Rehabilitative

Services, 779 F.2d 1509, 1513–14 (11th Cir. 1986).  Accordingly, the exception that

Plaintiff cites does not apply to this case.  Therefore, this claim is subject to dismissal.

Finally, the court reiterates its findings from an earlier Report and

Recommendation made with regard to other Defendants in this action against whom

Plaintiff pursued the same state-based claims:

> In the "Statement of Claims" section of the Sixth Amended
> Complaint Plaintiff relies on other provisions of Florida law and certain
> administrative rules not previously discussed, namely Fla. Stat.
> §§ 20.315, 943.13(7), and 944.09, and Rule 33-208.002(3)(a).
>
> With respect to the Florida statutes Plaintiff cites, § 20.315
> authorizes the creation of the FDOC; § 943.13(7) provides that
> correctional and other officers employed by the State of Florida shall
> have a good moral character, as determined by a background check; and
> § 944.09 grants the FDOC the authority to adopt rules.  Plaintiff's factual
> allegations in the "Statement of Facts" section of the Sixth Amended
> Complaint provide no support for his claims for relief based on a
> violation of these statutes nor has Plaintiff attempted to support these
> claims at summary judgment.  Furthermore, none of these statutes
> expressly creates a private cause of action for their violation, and no
> private cause of action should be implied.  The Florida Supreme Court
> has held that "legislative intent . . . should be the primary factor
> considered by a court in determining whether a cause of action exists
> when a statute does not expressly provide for one."  Murthy v. Sinha
> Corp., 644 So. 2d 983, 985 (Fla. 1994); *see also* QBE Ins. Corp. v.
> Chalfonte Condominium Apartment Ass'n, Inc., 94 So. 3d 541, 551 (Fla.
> 2012) ("Since Murthy, we have reaffirmed the principle that whether a
> statutory cause of action should be judicially implied is a question of
> legislative intent.").  "The primary guide in determining whether the

Legislature intended to create a private cause of action is the 'actual language used in the statute.'" <u>QBE Ins. Corp.</u>, 94 So. 3d at 551, citing <u>Borden v. East-European Ins. Co.</u>, 921 So. 2d 587, 595 (Fla. 2006). There is nothing in the legislative intent of Chapters 20, 943, or 944, Florida Statutes, which suggests the Legislature intended to create a private cause of action for these statutes.  *See* §§ 20.315, 943.085, 944.012.  Finally, there also is no factual or legal basis for Plaintiff to bring a claim against Defendants under Rule 33-208.002(3)(a), a provision of the Rules of Conduct for FDOC employees which requires them to stay physically fit and mentally alert, perform their duties fairly and impartially, and otherwise conduct themselves appropriately.

ECF No. 173 at 21–22.  Thus, Plaintiff's claims based on Section 768.28 and other state laws are also subject to dismissal.

For the aforementioned reasons, it is respectfully **RECOMMENDED**:

1.     That the Motion for Summary Judgment (ECF No. 372) filed by Defendant McNeil be **GRANTED**.

2.     That this case be **DISMISSED** with prejudice for Plaintiff's failure to exhaust available administrative remedies or to comply with pre-suit notice requirements.

3.     As all claims against all Defendants have now been dismissed, that the clerk be directed to enter judgment accordingly and close the file.

At Pensacola, Florida, this 15th day of November 2016.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**